WACHOVIA BANK AND TRUST COMPANY, Executor and Trustee Under Last Will and Testament of H. C. CAMERON, Deceased, v. WILLIAM A. WILDER and HENRY WILDER, Administrators, Estate of RUTH WILDER CAMERON, and MARGARET C. TEMPEST.

(Filed 16 June, 1961.)

**1. Estates § 9—**

The federal regulations in regard to the title and ownership of United States savings bonds have the force and effect of federal law and become a part of the bond contract between the purchaser and the Federal Government, and are determinative of the property rights of the parties to the bonds.

**2. Same—**

Where United States savings bonds are registered in the names of two individual co-owners in the alternative, and one of the co-owners dies, the surviving co-owner takes title by right of survivorship under the terms of the bonds, regardless of any provisions in the will of the deceased co-owner.

**3. Same: Executors and Administrators § 6— Rights of surviving co-owner of savings bonds may not be affected by written declaration of deceased co-owner.**

Testator purchased savings bonds and had them registered in the alternative in his own name and the name of his daughter. Testator retained control of the bonds and after his death they were found with a letter in his handwriting attached thereto, which letter stated that the bonds belonged to him and his second wife, as they had paid his daughter the face amount of the bonds. *Held:* Upon the father's death, title to the bonds vested in the daughter, and the contention that the daughter should hold the proceeds in trust is untenable, since the self-serving declaration in testator's handwriting is incompetent in evidence and cannot have the effect of impressing the proceeds of the bonds with a trust in favor of testator's widow.

**4. Declaratory Judgment Act § 2—**

In proceedings under the Declaratory Judgment Act the court is not required to give effect to incompetent evidence even though such evidence is embodied in the stipulations of counsel, there being sufficient competent evidence to support a judgment.

**5. Evidence § 28—**

A statement in the handwriting of testator, found attached to U. S. savings bonds registered in his and his daughter's names stating that he and his wife had given his daughter the face amount of the bonds and that the bonds belonged to himself and his wife, is incompetent as hearsay, and since such evidence is hearsay and does not come within any exceptions to the hearsay rule, it is incompetent irrespective of the fact that it is a self-serving declaration.

**6. Pleadings § 30—**

Where defendant admits plaintiff's allegations of indebtedness in a

specified amount, the court is authorized to enter a judgment according G.S. 1-510, and such defendant is bound by the judgment.

APPEAL by defendants Wilder, administrators, from *Hobgood, J.,* August 1960 Civil Term of HARNETT.

Civil action for declaratory judgment determining the ownership of, and the interests of the respective parties in, certain United States Savings Bonds.

The cause was heard without intervention of a jury upon facts stipulated and admissions in the pleadings. These facts and admissions are summarized as follows (paragraphing ours):

(a) Two United States Savings Bonds, Series G, Nos. V 445 154G and V 475 355G, dated Nov. 1944, were issued to "Hugh C. Cameron or Mrs. Margaret C. Tempesta." Hugh C. Cameron and H. C. Cameron are the same person; and Margaret C. Tempesta and Margaret C. Tempest are one and the same person. Margaret C. Tempest is the daughter of H. C. Cameron.

(b) The bonds were issued under the Code of Federal Regulations, Cumulative Supplement, Book 6, 1944, Title 31, Chapter II, Part 315, Sub-part K, s. 315.32.

(c) H. C. Cameron died testate 14 July 1955. His will was admitted to probate and the plaintiff, Wachovia Bank and Trust Company, qualified as executor and trustee thereunder.

(d) Testator's wife, Ruth Wilder Cameron, and his daughter, Margaret C. Tempest, survived him. Ruth Wilder Cameron was testator's second wife and the step-mother of Margaret C. Tempest.

(e) At the time of testator's death the bonds in question were in his and Ruth Wilder Cameron's possession. They were delivered to plaintiff by Ruth Wilder Cameron and plaintiff now has them in possession. The following letter was attached to the bonds at the time of their delivery to the plaintiff, and it was written on H. C. Cameron's stationery, was entirely in his handwriting, and was signed by him:

"April 5, 1952

"Those 2—5000.00 dollar Bonds of H. C. Cameron or Margaret Cameron Tempest belong to H. C. Cameron and Mrs. Ruth Cameron as we have given Margaret check for $10,000.00 for the bonds. She now has no part in them.

H. C. Cameron."

(f) The will of H. C. Cameron provides, in pertinent part, as follows:

"ARTICLE II. If my wife, Ruth Wilder Cameron, is living at the

time of my death, I bequeath to her any and all United States Government bonds owned by me at the time of my death. . . . If my wife or any other beneficiary herein named shall owe me or Cameron Lumber Company any debt at my death, the same shall be settled by deducting such debt from the shares of each such beneficiary in the distribution of my estate."

"Article VII. . . .

"If my said wife, Ruth Wilder Cameron, does not survive me or shall die before any part of my property is distributed to her under the terms of this my last will and testament, then her interest in my property shall lapse and the share or shares thereof to which she would be entitled if living shall go to my surviving children or their legal representatives equally and share and share alike."

(g) Margaret C. Tempest is entitled to a one-seventh distributive share in the undivided estate of H. C. Cameron (not specifically devised). The estate is solvent.

(h) Ruth Wilder Cameron died intestate 20 February 1957 and defendants Wilder qualified as administrators of her estate.

(i) This action for declaratory judgment was instituted by plaintiff executor. The complaint alleges, *inter alia:*

"5. Margaret C. Tempest claims said bonds, and asserts and states that they were delivered to her father by her as security for a no interest loan of $10,000.00 and that she is entitled to the bonds on payment of said sum less her pro rata share as devisee under the Will of H. C. Cameron, and that she justly owes said estate said sum;

"6. The defendants Wilder claim said bonds as the property of their intestate."

(j) Defendant Tempest, answering, admits the allegations of paragraph 5 of the complaint. Defendants Wilder deny the allegations of paragraph 5 and admit the allegations of paragraph 6.

(k) Plaintiff's prayer for relief contains the following:

"(1) That the rights of the parties under said will and writings be determined and declared; and

"(2) That plaintiff be declared entitled to recover of the defendant Margaret C. Tempest the sum of $10,000.00 less her one-seventh distributive share and the proceeds of said bonds be impressed with a trust in its favor in said amount; and

"(3) The defendants Wilder be adjudged not entitled to said bonds in any particular . . ."

The court entered judgment, containing findings of fact (involving conclusions of law), in part as follows:

"(2) That Mrs. Margaret C. Tempesta is one and the same person

TRUST CO. *v.* WILDER.

as Margaret C. Tempest, referred to in the pleadings of the parties; and is the same person as Mrs. Margaret C. Tempesta set forth in the face of the aforesaid two Series "G" Savings Bonds.

"(3) That at the time of the death of Hugh C. Cameron (referred to in the pleadings as H. C. Cameron), the aforesaid two Series G Savings Bonds were in *his possession.*

"(4) That . . . Margaret C. Tempest is entitled to a one-seventh (1/7) distributive share in said Estate of H. C. Cameron.

"(5) That the aforesaid Series "G" Savings Bonds are non-assignable or non-transferable, pursuant to the Regulations of the Department of the Treasury of the United States of America.

"(6) That Margaret C. Tempest is the surviving payee set forth within the face of the aforesaid two Savings Bonds of $5,000.00 each.

"(7) That Margaret C. Tempest, contrary to the legal effect of the Regulations of the Department of the Treasury of the United States of America, pledged said two Savings Bonds to H. C. Cameron for a non-interest bearing loan or advancement of $10,000.00 sometime in April, 1952, and received from H. C. Cameron at said time the sum of $10,000.00.

"(8) That Margaret C. Tempest is the legal owner of the aforesaid two Series G. Savings Bonds, totaling $10,000.00, and such interest as thereon has accrued and may be payable by the Department of the Treasury of the United States of America.

"(9) That by virtue of the Pledge, of said Bonds to H. C. Cameron by Margaret C. Tempest, although contrary to Treasury Department Regulations, the Estate of H. C. Cameron has an equitable lien upon said bonds in the sum of and to the extent of $10,000.00.

. . . .

"(11) That the codefendants William A. Wilder and Henry Wilder, Administrators of the Estate of Ruth Wilder Cameron, have no right or interest in said bonds in their administrative capacity or otherwise as to or for the Estate of Ruth Wilder Cameron."

"NOW, THEREFORE, upon the foregoing findings of fact, IT IS ORDERED, ADJUDGED AND DECREED that:

"(1) Margaret C. Tempest shall execute, as surviving payee, the "Request for Payment" section on the back side of the United Savings Bond V-445-154-G in the sum of $5,000.00, and Bond V-475-355-G in the sum of $5,000.00, and thereupon transmit said bonds for payment to the Treasury Department of the United States through the facilities of the plaintiff.

"(2) That upon receipt of the proceeds from aforesaid two Savings Bonds the sum of $10,000 shall be turned over to the plaintiff, its Trust Department, and said sum shall be incorporated as a part

of the funds belonging to the Estate of Hugh C. Cameron. Any sum representing interest upon said Bonds, in excess of the $10,000.00 aforesaid, shall be and remain the separate property of Margaret C. Tempest.

"(3) That the plaintiff, as Executor of the Estate of Hugh C. Cameron, shall retain said bonds in its possession and control until and pending the execution of the "Request for Payment" by Margaret C. Tempest; and shall act as agent for Margaret C. Tempest in the transmittal of said bonds for payment; and if said bonds are paid by Treasury Department Check or Checks, the plaintiff shall retain the possession and control of same and present same for the endorsement of Margaret C. Tempest.

"(4) The Estate of Hugh C. Cameron has an equitable lien upon the aforesaid two Savings Bonds in the sum of $10,000.00, and the proceeds from said bonds to this extent are engrafted and impounded in the hands of the agent of Margaret C. Tempest, while the cashing in of the bonds is in process; and until such time as the sum of $10,000.00 is delivered into the hands of the plaintiff, Executor of Hugh C. Cameron Estate."

Defendants Wilder appeal.

*D. B. Teague and Hoyle & Hoyle for plaintiff, appellee.*
*James R. Farlow for defendant Margaret C. Tempest, appellee.*
*Mordecai, Mills and Parker for defendants Wilder, administrators, appellants.*

Moore, J.  It is stipulated by all parties that the United States Savings Bonds, Series G, here involved, were issued under and subject to the Code of Federal Regulations, Cumulative Supplement, Book 6, 1944, Title 31, Chapter II, Part 315, Sub-part K, s. 315.32. The effect of these regulations in relation to the title and ownership of such and similar bonds has been the subject of discussion and decision in a number of cases in this jurisdiction. *Tanner v. Ervin*, 250 N.C. 602, 109 S.E. 2d 460; *Wright v. McMullan* and *Wright v. Wright*, 249 N.C. 591, 107 S.E. 2d 98; *Jones v. Callahan*, 242 N.C. 566, 89 S.E. 2d 111; *Watkins v. Shaw*, 234 N.C. 96, 65 S.E. 2d 881; *Ervin v. Conn* and *Bank v. Frederickson*, 225 N.C. 267, 34 S.E. 2d 402. In the opinions in these cases the decisions in this and other jurisdictions are cited and discussed and explanations of the principles applied are fully set out. Explanative and extended discussion of the subject would be unnecessarily repetitious in the instant case. Here we merely summarize the applicable and controlling principles already established.

"United States Savings Bonds are not transferable and are payable only to the owners named thereon . . . . Accordingly, savings bonds may not be sold or hypothecated as collateral for a loan and may not be used as security for the performance of an obligation. . . ." Fed. Regs., Title 31, C. II, Part 315, Sub-part C, s. 315.8.

"The regulations by clear and unmistakable language fix ownership by the form of registration. These bonds could not be the subject of a gift *inter vivos* or *causa mortis*. State laws fixing the requirements for a valid gift have no application to these bonds." *Wright v. McMullan* and *Wright v. Wright, supra.*

Section 315.32 of the above Regulations provides: "A savings bond registered in the names of two persons as coowners in the form 'John A. Jones or Mrs. Mary C. Jones,' will be paid or reissued as follows: (a) . . . . (b) *After the death of one coowner.* If either coowner dies without having presented and surrendered the bond for payment . . . the surviving coowner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him."

"The rule followed by a majority of the Courts, including North Carolina, frequently called the 'majority rule,' with respect to rights in United States Savings Bonds registered . . . in the name of two individual co-owners in the alternative, is that, upon the death of one of the co-owners, the surviving co-owner is vested with the sole ownership in such bonds, at least in the absence of fraud or other inequitable conduct on the part of the survivor." *Tanner v. Ervin, supra.*

"The principal basis of the majority view is that solution of the question as to the property rights of the surviving co-owner in a . . . Bond is one of contract, and that the Treasury Regulations having the force and effect of federal law, become a part of the bond as a contract between the purchaser and the federal government, and fix legal title to the bond, and are determinative of the property rights of the parties to the bond." *ibid.* Accord: *Ervin v. Conn* and *Bank v. Frederickson, supra,* at page 274.

Where a co-owner dies testate, the title to the bond passes not by virtue of anything contained in the will, but by right of survivorship under the terms of the bond itself. *Jones v. Callahan, supra.*

Where a husband and wife purchased United States Savings Bonds with money owned jointly by them, the bonds being issued in their names in the alternative, and they thereafter entered into a separation agreement in which it was provided that the husband should have and own the bonds, he having given valuable consideration therefor and having failed to present the bonds for payment during his lifetime, this Court held that the proceeds of the bonds were impressed

with a resulting trust in favor of the husband's executor by reason of the separation agreement and the unjust enrichment of the wife should she be permitted to retain the proceeds. *Tanner v. Ervin, supra.*

In the case at bar defendants Wilder contend that, as evidenced by letter attached to the bonds, H. C. Cameron paid to Margaret C. Tempest $10,000.00, in consideration of which Margaret C. Tempest surrendered and conveyed to Cameron all beneficial interest in the bonds and now has only the bare right to present the bonds for payment and to collect the principal and interest, and must hold the proceeds in trust for the person entitled to the beneficial interest. They contend further that the beneficial interest passed to Ruth Wilder Cameron under the will of H. C. Cameron.

The decisive question in this case is: What weight and effect must be given by the court to the letter which was attached to the bonds by H. C. Cameron? The court below gave it no effect and thereby eliminated the crucial evidence upon which the claim of defendants Wilder depends.

The letter was included in the stipulations of counsel. Had it been offered in evidence upon trial, its admission, over objection, would have been error. It is hearsay evidence. The fact that it was admitted by stipulation does not require the judge to give it legal effect, although exceptions to a judgment on the ground that it is based on incompetent evidence have been held untenable when the evidence is admitted without objection. *Poole v. Gentry,* 229 N.C. 266, 269, 49 S.E. 2d 464. However, "in reviewing a trial before the court without a jury it will be presumed that incompetent evidence was disregarded and the issue determined only from a consideration of competent evidence . . . ." *Bizzell v. Bizzell,* 247 N.C. 590, 605, 101 S.E. 2d 668. There is no rule requiring a judge, in a case in which the facts are agreed and stipulated, to give effect to incompetent evidence, though not objected to, if there is sufficient competent evidence to support a judgment.

The self-serving declarations of a deceased, whether oral or written, are ordinarily considered to be hearsay and inadmissible in evidence. "There is a general rule that self-serving declarations, defined as statements favorable to the interest of the declarant, are not admissible in evidence as proof of the facts asserted, whether they arose by implication from acts and conduct or were made orally or reduced to writing. The vital objection to the admission of this kind of evidence is its hearsay character." 20 Am. Jur., Evidence, s. 558, pp. 470, 471. ". . . (I)t has been held that self-serving declarations, although admitted without objection, are without probative value." 88 C.J.S., Trial, s. 152, p. 298. *Fredenburg v. Horn,* 218 P. 939, 30

A.L.R. 1153 (Ore. 1923), was an action to recover damages for alleged conversion of estate property by the executor. In reference to an exception to the exclusion of evidence, the Court said: "It is alleged that the Court erred in sustaining the objections made to testimony as to declarations of the deceased that he was the owner of the property. . . . (T)hey were purely self-serving, if made at all."

We do not seek to alter the hearsay rule so as to make the incompetency of self-serving declarations more extensive than heretofore in this jurisdiction, and we quote with approval the following statement: "Hearsay statements are sometimes excluded on the ground that they are 'self-serving.' This phrase is often useful as emphasizing the inapplicability of some hearsay exception or as suggesting a reason for the rigid enforcement of the hearsay rule in the particular case, but it does not describe an independent ground of objection. If the statement is hearsay, and is not admissible under some specific rule, it is subject to exclusion regardless of whether it is self-serving, neutral, or self-disserving." Stansbury: North Carolina Evidence, s. 140, p. 280.

We think the unsupported *ex parte* statement of deceased H. C. Cameron, that he had purchased the bonds from Margaret and that they belonged to him and Mrs. Cameron, was incompetent and the court was justified in disregarding it. It does not come within an exception to the hearsay rule. Stansbury: North Carolina Evidence, s. 147, p. 300.

It is our opinion and we hold that Margaret C. Tempest has title to and owns the bonds in controversy. *Wright v. McMullan* and *Wright v. Wright, supra.*

Defendant Tempest admits, in answering paragraph 5 of the complaint, that she obtained a "no interest loan" of $10,000.00 from H. C. Cameron and is indebted to his estate in this amount. She further admits that she delivered the bonds to him as security for the loan.

It is unnecessary to decide whether or not the transaction alleged by plaintiff and admitted by defendant Tempest created an equitable lien in favor of the estate of H. C. Cameron against the proceeds of the bonds. Defendant Tempest consented to the judgment entered by the court below and is bound thereby.

When it is alleged that a defendant is indebted to plaintiff and defendant admits that all or a portion of the debt is due, the court is authorized to enter judgment accordingly. G.S. 1-510. *McKay v. Investment Co.*, 228 N.C. 290, 45 S.E. 2d 358; *Fertilizer Co. v. Trading Co.*, 203 N.C. 261, 165 S.E. 694.

In affirming the judgment below we approve only those conclusions of law necessary to support the judgment and which are in accord with this opinion.

Affirmed.