STATE OF NORTH CAROLINA v. LEROY COOK

No. 11

(Filed 15 March 1972)

1. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— capital case — excusing of jurors who would never return death penalty**

   In a prosecution for the capital crime of rape, the trial court did not err in sustaining the State's challenges for cause to nine prospective jurors who stated on voir dire that he or she would not, under any circumstances, regardless of the evidence, consider joining in a verdict as a result of which the death penalty would be imposed, but would vote automatically against such a verdict.

2. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— capital case — Witherspoon decision — death penalty not imposed**

   The decision of *Witherspoon v. Illinois,* 391 U.S. 510, has no application where the verdict rendered by the jury in a capital case does not result in the imposition of the death penalty.

3. **Criminal Law § 86— rape trial — cross-examination of defendant — conviction for other sex offenses — refusal to rule on pretrial motion**

   In this prosecution for the rape of an eight-year-old child, defendant was not prejudiced by the refusal of the trial court to rule, prior to the trial, upon defendant's motion that, if he should elect to take the witness stand and testify, the State be denied the right to cross-examine him concerning his prior convictions for other sex crimes, since such cross-examination would have been competent had defendant taken the stand as a witness in his own behalf.

4. **Criminal Law § 86— cross-examination of defendant — prior convictions**

   When the defendant in a criminal action becomes a witness in his own behalf, he is subject to cross-examination like any other witness and, for the purpose of impeachment, may be asked about his prior convictions, including those for offenses similar to that for which he is presently on trial.

5. **Witnesses § 1— competency of child to testify**

   The determination of the competency of a child to testify is a matter resting in the sound discretion of the trial judge.

State v. Cook

6. **Witnesses § 1— competency of eight-year-old rape victim to testify**

The trial court did not err in ruling that an eight-year-old rape victim was competent to testify in the trial of her alleged assailant.

7. **Criminal Law § 98— sequestration of witnesses — allowing mother of raped child to remain in courtroom**

In this prosecution for the rape of an eight-year-old child, the trial court did not abuse its discretion in granting defendant's motion that the witnesses for the State be sequestered, with the exception of permitting the child's mother to remain in the courtroom while the child testified.

8. **Criminal Law § 66— identification of defendant — placing hand on defendant's shoulder**

There was nothing improper in permitting an eight-year-old rape victim to step down from the witness chair and walk over to the defendant and, by placing her hand on his shoulder, identify him positively as her assailant.

9. **Criminal Law § 66— in-court identification — failure to object or to request voir dire**

The trial court did not err in permitting the in-court identification of defendant by an eight-year-old rape victim without holding a voir dire to determine whether there had been an impermissible pretrial photographic identification, where there was no objection to the initial in-court identification of defendant by the victim and there was no request for a voir dire.

10. **Criminal Law §§ 89, 117— pretrial statements by rape victim — corroboration — instructions**

The trial court did not err in admitting for corroborative purposes evidence of pretrial statements by an eight-year-old rape victim to her mother, to the investigating officer, and as a witness at the defendant's preliminary hearing, or in instructing the jury that such corroborative evidence might be considered "as to what weight and credit" the jury would give to the victim's testimony.

11. **Witnesses § 7— allowance of unresponsive testimony**

The trial court did not abuse its discretion in allowing a police officer, over defendant's objection, to give testimony concerning his investigation of an alleged rape which was not responsive to the question asked by the solicitor.

12. **Witnesses § 7— right of witness to give full answer**

A witness is entitled to give a full answer to a question propounded to him, subject to the right of the court in its discretion to cut off an unnecessarily detailed or repetitious answer.

13. **Criminal Law § 77— request for lie detector test — self-serving declaration**

The trial court in a rape prosecution properly excluded testimony by the jailer and one of the investigating officers as to alleged requests by defendant to them for the administration of a lie detector

---

---

test, the testimony being incompetent as a self-serving declaration not coming within any exception to the hearsay rule.

**14. Criminal Law § 112— instructions on alibi**

The trial court's instructions on alibi, including a statement that "Alibi is not a defense within any accurate meaning of the word 'defense' but is a mere fact which may be used to call into question the identity of one person charged or the entire basis of the prosecution," *held* without error.

APPEAL by defendant from *Harry Martin, J.,* at the 9 August 1971 Criminal Session of BUNCOMBE.

Upon an indictment, proper in form, the defendant was tried and found guilty of the rape of Tanya Denise Jeffries, eight years of age. The jury, at the time of returning its verdict, recommended that he be imprisoned for life. A judgment was entered imposing a sentence in accordance with the verdict and recommendation.

The child testified that she was eight years of age. On 2 May 1971, she was at an amusement area for the purpose of riding on some of the amusement devices. The defendant, whom she identified in the courtroom, took her by the arm and dragged her to a tent in a nearby wooded area. There, he partially disrobed her, whipped her and had sexual intercourse with her. Thereafter, he gave her a dollar and let her go home. Upon arrival there she informed her mother as to what had occurred. Her mother took her to the hospital where she was examined and treated. Following her release from the hospital, the child led the investigating police officer to the tent where the offense had occurred. She described her assailant to the officer and thereafter identified the last of five pictures exhibited to her as a photograph of her assailant. This was a picture of the defendant. In the perpetration of the offense, the defendant slapped her in the face and "busted her lip." She identified the defendant in the courtroom by walking to him from the witness stand and placing her hand on his shoulder.

The child's mother testified that the little girl was eight years of age at the time of the offense, that she returned home from the amusement area with her clothing dirty from grass stains and blood and with a "bursted lip." Upon arrival she told her mother what had happened. Following her stay in the

State v. Cook

hospital for treatment, the little girl led her mother and the investigating officer to a tent in the woods near the amusement area and told them this was where the offense had occurred.

The doctor who examined the child at the hospital, approximately two hours after the alleged offense, testified that her face was swollen and bruised and that in his opinion she had been recently penetrated, there being sperm present in the vaginal canal and substantial bleeding.

The investigating officer testified as to the description of the assailant given him by the child. He further testified that from the child's description he went to the area and located a tent in a thicket of bushes and brambles down an embankment from the amusement area. Keeping this location under observation, he observed a man go over the embankment and into the bushes after nightfall. Going immediately to the tent, he found the defendant therein and arrested him. Following the child's release from the hospital, the officer took her to the vicinity and she led him to the tent, saying this was the place where the attack upon her occurred. The tent contained an old mattress, some blankets, food and clothing and gave an appearance of having been lived in for some time. The officer placed the defendant under arrest and told the defendant "to get all his things and put them in a paper bag." The defendant, in response to this instruction by the officer, took with him the clothing and food in the tent.

The defendant did not testify but offered evidence, including the reading by the reporter of excerpts from the transcript of the testimony of the child and that of her mother at the preliminary hearing, contending that these were inconsistent with their testimony at the trial. On cross-examination, the State had the reporter read other excerpts from the child's testimony at the preliminary hearing, which the court instructed the jury were competent only for the purpose of corroborating the child's testimony if the jury found that it did so corroborate her.

The defendant also introduced the testimony of witnesses to the effect that they had seen him at the amusement area during the time of the alleged offense, the apparent purpose of the testimony being to establish an alibi.

*Attorney General Morgan and Assistant Attorney General Eagles for the State.*

*Gudger, Erwin & Crow by James P. Erwin, Jr., for defendant.*

LAKE, Justice.

[1, 2] The defendant assigns as error the sustaining of challenges for cause by the State to nine prospective jurors. Each of the prospective jurors so excused stated on voir dire that he or she would not, under any circumstances, regardless of the evidence, consider joining in a verdict as a result of which the death penalty would be imposed, but would vote automatically against such a verdict. In these rulings by the trial court, there was no error. They were not in violation of the decision of the Supreme Court of the United States in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed. 2d 776. We have so held, since the Witherspoon decision was announced, in cases wherein the verdict of the jury, so selected, resulted in the imposition of the death penalty. *State v. Atkinson,* 275 N.C. 288, 303-308, 167 S.E. 2d 241; *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487. While in both of these cases the judgment was reversed by the Supreme Court of the United States, insofar as it imposed the death penalty, such reversal was on a different ground and our view as to the validity of the selection of the jury was not mentioned. Where, as here, the verdict actually rendered by the jury so selected does not result in the imposition of the death penalty, the decision in *Witherspoon v. Illinois, supra,* has no application. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 2d 797; *State v. Dickens,* 278 N.C. 537, 548, 180 S.E. 2d 844; *State v. Williams,* 275 N.C. 77, 86, 165 S.E. 2d 481; *State v. Peele,* 274 N.C. 106, 113-114, 161 S.E. 2d 568. There is nothing to be gained in rethreshing this old straw.

[3] The defendant next assigns as error the refusal of the trial judge to rule, prior to trial, upon the defendant's motion that, if he should elect to take the witness stand and testify, the State be denied the right to cross-examine him concerning his prior convictions for other sex crimes. The defendant's motion recited, "that among the charges and convictions appearing on the defendant's record are charges and convictions involving sex crimes similar in nature to the crime with which

State v. Cook

the defendant is charged in this action." His contention is that to permit the State, on cross-examination, to inquire into these offenses for the purpose of impeaching his credibility as a witness would be highly prejudicial and so, impermissible. The trial judge stated that he would not pass on the motion at that time; i.e., prior to trial. The defendant did not take the stand and, consequently, no evidence of his prior convictions on these or other offenses was introduced.

[4] It is well established in this State that when the defendant in a criminal action becomes a witness in his own behalf, he is subject to cross-examination like any other witness and, for the purpose of impeachment, may be asked about his prior convictions, including those for offenses similar to that for which he is presently on trial. *State v. Brown,* 266 N.C. 55, 58, 145 S.E. 2d 297 (no longer a correct statement of the law as to questions concerning previous indictments as distinguished from previous convictions) ; Stansbury, North Carolina Evidence, 2d Ed., §§ 38 and 112. Since, had the defendant taken the stand as a witness in his own behalf, cross-examination of the type in question would have been competent, the failure of the court to grant his motion prior to the commencement of the trial does not afford basis for granting him a new trial.

[5, 6] The defendant next assigns as error the ruling by the trial court, following an examination of Tanya Denise Jeffries, that the child was competent to testify, notwithstanding her tender age. Here, too, the law of this State is well settled contrary to the defendant's position. The determination of the competency of a child to testify is a matter resting in the sound discretion of the trial judge. *State v. Turner,* 268 N.C. 225, 230, 150 S.E. 2d 406, is directly in point with reference to the competency of an eight-year-old child to testify in a case of this nature. There, we said:

> "There was no error in holding that the little girl who was the alleged victim of these offenses was a competent witness. *Artesani v. Gritton,* 252 N.C. 463, 113 S.E. 2d 895; *State v. Merritt,* 236 N.C. 363, 72 S.E. 2d 754; *State v. Gibson,* 221 N.C. 252, 20 S.E. 2d 51; Wigmore on Evidence, 3d Ed., § 505. There is no age below which one is incompetent, as a matter of law, to testify. The test of competency is the capacity of the proposed witness to understand and to relate under the obligation of an oath

facts which will assist the jury in determining the truth of the matters as to which it is called upon to decide. This is a matter which rests in the sound discretion of the trial judge in the light of his examination and observation of the particular witness. In the present case, the child was examined with reference to her intelligence, understanding and religious beliefs concerning the telling of a falsehood, all of which took place out of the presence of the jury. The record indicates that she was alert, intelligent and fully aware of the necessity for telling the truth."

In the present case, as in *State v. Turner, supra,* there is nothing in the record to indicate an abuse of discretion in permitting the child to testify.

[7] Likewise, there was no error in granting the defendant's motion that the witnesses for the State be sequestered, with the exception of permitting the child's mother to remain in the courtroom while the child testified. The sequestration of witnesses is not a matter of right but is discretionary with the trial judge. *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 641, 157 S.E. 2d 386; *State v. Manuel,* 64 N.C. 601; Stansbury, North Carolina Evidence, 2d Ed., § 20. It was clearly not an abuse of discretion to permit the mother of an eight-year-old witness to remain in the courtroom while the child testified so as to give the child the comfort of her mother's presence in strange and, at best, frightening circumstances to a little girl testifying in a case of this nature.

[8] There is likewise no merit in the contention that permitting the in-court identification of the defendant by the child was error. There was nothing improper in permitting the little witness to step down from the witness chair and walk over to the defendant and, by placing her hand on his shoulder, identify him positively as her assailant. The child had previously testified that the defendant, whom she thereupon indicated in a manner not disclosed by the record, looked just like her assailant. To this testimony there was no objection. The touching of the defendant by the witness simply removed any possibility of doubt as to the man she was identifying as the assailant.

There was no reference to the little girl's pretrial selection of a photograph of the defendant from amongst five pictures, exhibited to her by the investigating officer, until the defend-

ant brought this out on cross-examination of the child. There is nothing whatever in the record to show that this pretrial procedure was conducted in an impermissibly suggestive manner. At no time did the defendant move to suppress evidence of an in-court identification of the defendant by this witness, and there was never a request by him that a voir dire be held to determine whether there had been an impermissible pretrial identification. The defendant was never placed in a lineup.

[9]   In *State v. Accor* and *State v. Moore*, 277 N.C. 65, 79, 175 S.E. 2d 583, Chief Justice Bobbitt said: "When the State offers a witness whose testimony tends to identify the defendant as the person who committed the crime charged in the indictment, and the defendant interposes timely objection and requests a *voir dire* or asks for an opportunity to 'qualify' the witness, such *voir dire* should be conducted in the absence of the jury and the competency of the evidence evaluated. Upon such hearing, if the in-court identification by a witness is challenged on the ground it is tainted by an unlawful out-of-court photographic or corporeal identification, all relevant facts should be elicited and all factual questions determined, including those involving the defendant's constitutional rights, pertinent to the admissibility of the proffered evidence." In the present case, as above noted, there was no objection to the initial in-court identification of the defendant by this witness and there was no request for a voir dire. This assignment is without merit.

[10]   There was no error in the admission of evidence of pretrial statements by the child to her mother, to the investigating officer and as a witness at the defendant's preliminary hearing. Stansbury, North Carolina Evidence, 2d Ed., §§ 50 and 51. The jury was instructed that this evidence was admitted for the sole purpose of corroborating the little girl if the jury found it did so. Nor was it error for the court, at the time of admitting such evidence, to instruct the jury that such evidence, competent for corroborative purposes only, might be considered by the jury "as going to what weight and credit" the jury would give to the testimony of the child. The defendant's Assignments of Error 6, 8 and 10 are overruled.

[11, 12]   On cross-examination, the child testified that when the investigating officers came to see her at the hospital, she answered their questions, including their question as to what her assailant "looked like." Police Sergeant Letterman testified

that he talked to the little girl and "she described the man as being an old fellow, small, getting gray and said he had on dark pants or light or white shirt and said his hair was down on his forehead." He then continued to testify as to his and his associate's actions in the investigation, including his discovery of and first visit to the tent where the alleged offense occurred. The solicitor then asked: "All right. Now after you made the first visit to this lean-to what did you do?" The witness replied: "Let's back up just a little." Thereupon, over objection on the ground that "he ought to respond to the question as it's asked," the witness testified further concerning what he did when he first reached the amusement area where the child was first accosted by her assailant. In this testimony he related that he then talked to the defendant at this area and instructed him not to leave town as the officer might want to talk to him later. He testified that the defendant "seemed quite nervous." The defendant assigns the overruling of his objection as error on the ground that this testimony was not responsive to the question. While it was not responsive to the question above quoted, we are unable to determine from the record whether it was responsive to a previous question since the previous questions are not set forth. A witness is entitled to give a full answer to a question propounded to him, subject to the right of the court in its discretion, to cut off an unnecessarily detailed or repetitious answer. Stansbury, North Carolina Evidence, 2d Ed., § 25. There is nothing in connection with this testimony to indicate an abuse of discretion by the trial court.

Officer Letterman then identified the photograph of the defendant selected by the little girl from the five pictures handed to her for inspection by the officer. He then testified: "That's the one. I picked him up and his hair was hanging down on his forehead just like she described it." The defendant now contends that this answer was not responsive to the question propounded to the officer. The record does not show what the question was and we are, therefore, unable to find merit in this assignment of error.

[13] There was no error in the sustaining of the objection to the defendant's questions to the jailer and to one of the investigating officers, called as witnesses by him, as to alleged requests by the defendant to them for the administration of a lie detector test. The purpose of such proposed testimony was

clearly to present the inference that the defendant was innocent of the charge and had nothing to fear from such a test. Thus, the proposed testimony went further than the mere proof of a statement as a fact in and of itself. Being designed to establish the truth of the inference to be drawn from it, the proposed testimony was hearsay. Stansbury, North Carolina Evidence, 2d Ed., § 138. Being a self-serving declaration and not within any of the established exceptions to the Hearsay Rule, the objections were properly sustained. *Trust Co. v. Wilder,* 255 N.C. 114, 120 S.E. 2d 404; Stansbury, North Carolina Evidence, 2d Ed. § 140.

[14] The court properly charged the jury as to the burden of proof upon the contention supported by the defendant's evidence designed to establish an alibi. Included in that portion of the charge was the following sentence: "Alibi is not a defense within any accurate meaning of the word 'defense' but is a mere fact which may be used to call into question the identity of one person charged or the entire basis of the prosecution." The charge on the subject of alibi was full and complete and there is no merit in the exception to this excerpt from it. See *State v. Bridgers,* 233 N.C. 577, 579, 64 S.E. 2d 867.

The defendant's final contention that there was error in denying his motion for judgment of nonsuit is obviously without merit.

No error.