STATE OF NORTH CAROLINA v. OWEN SWANSON DOSS

No. 1

(Filed 13 October 1971)

1. **Constitutional Law § 30; Criminal Law § 135; Homicide § 31— capital crime — single verdict procedure — punishment discretion of jury**

    Constitutional rights of a defendant on trial for the capital crime of first degree murder were not violated by the single verdict procedure or by the fact that the jury had unbridled discretion to determine whether to impose the death penalty.

2. **Constitutional Law § 36; Criminal Law § 135— death penalty**

    The imposition of the death penalty in North Carolina is not *per se* unconstitutional.

3. **Constitutional Law § 29; Criminal Law § 135; Homicide § 31— death penalty for first degree murder**

    Imposition of the death penalty for first degree murder was not rendered unconstitutional by the U. S. Supreme Court decisions of *U. S. v. Jackson*, 390 U.S. 570, and *Pope v. U. S.*, 393 U.S. 651, where the crime was committed and the trial was held subsequent to the repeal of G.S. 15-162.1, under which a person accused of first degree murder received a sentence of life imprisonment upon acceptance of his plea of guilty to that crime.

4. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— exclusion of jurors who would never return death penalty**

    In this prosecution for the capital crime of first degree murder, the trial court properly sustained the State's challenges for cause of 30 prospective jurors who made it clear on *voir dire* examination that, before hearing any of the evidence, each of them had already made up his mind that he would not return a verdict pursuant to which defendant might lawfully be executed, whatever the evidence might be.

**5. Criminal Law § 34— testimony that defendant was escapee from work release**

In this homicide prosecution, testimony that defendant was an inmate of the Correctional Department and had failed to return from his work release job the day before the crime was committed was competent as proof of the identity of defendant and as a fact in the chain of events leading up to the commission of the crime.

**6. Criminal Law § 169— admission of evidence over objection — similar evidence admitted without objection**

Any error in the admission, over defendant's objection, of testimony that defendant was an escapee from the work release program when the crime was committtted was cured when similar testimony was given by another witness without objection.

**7. Homicide § 20— photographs of homicide victim's body**

The trial court did not err in the admission of photographs of the body of the homicide victim for the purpose of illustrating the testimony of a witness for the State.

**8. Constitutional Law § 32; Criminal Law § 75— capital case — in-custody interrogation — indigent defendant — waiver of counsel**

An indigent defendant in a capital case cannot waive his right to counsel at an in-custody interrogation. G.S. 7A-451(b)(1).

**9. Criminal Law § 75— capital case — in-custody interrogation without counsel — admission of defendant's statements — harmless error**

In this prosecution for the capital crime of first degree murder, the trial court erred in the admission of statements made by defendant during in-custody interrogation without counsel identifying clothes which the State contended he was wearing during commission of the crime; however, such error was harmless beyond a reasonable doubt in light of other evidence identifying the clothing and the overwhelming evidence of defendant's guilt presented by the State.

**10. Criminal Law § 76— admission of in-custody statements — findings of fact — when made**

The trial court should make its findings of fact concerning the admissibility of defendant's in-custody statements during the trial, preferably at the time such statements are tendered and before they are admitted, and not following completion of the trial.

**11. Criminal Law §§ 75, 89— reading from transcript of tape recording — corroboration of accomplice**

In this prosecution for first degree murder, the trial court did not err in permitting a deputy sheriff to read from a typed transcript of a tape recording of a statement made by defendant's accomplice for the purpose of corroborating the accomplice's testimony, where the witness testified that the typed statement was a true and correct transcript of the tape recording made by the accomplice, and that the tape recording was the voice of the accomplice and was a fair and accurate representation of the statement given by the accomplice.

**12. Homicide § 21— murder during perpetration of sodomy**

The State's evidence was sufficient to be submitted to the jury in this prosecution for first degree murder committed during the perpetration of the felony of sodomy.

**13. Criminal Law § 118— instructions on contentions of the parties**

While the record does not reflect that the court spent more time in stating the contentions of the State than in stating those for defendant, to have done so would not have been error, since the State introduced extensive evidence and defendant introduced none.

**14. Criminal Law § 6; Homicide § 30— homicide in perpetration of sodomy — defense of intoxication**

Where the State's evidence established a homicide committed in the perpetration of sodomy upon a 15-year-old boy under threat of gunfire and a knife, the offense is murder in the first degree irrespective of premeditation and deliberation or malice aforethought, and the court was thus not required to submit the question of second degree murder upon evidence that defendant was drinking when the crime was committed; furthermore, the evidence was insufficient to make the defense of intoxication available to defendant.

**15. Crime Against Nature § 2; Homicide § 23— homicide in perpetration of crime against nature — instructions defining crime against nature**

The trial court did not err in failing to give a detailed definition of crime against nature in a prosecution for a homicide committed during perpetration of a crime against nature.

**16. Criminal Law § 114— instructions — expression of opinion**

In this prosecution for first degree murder, the trial court's instruction that "all the inferences in connection with the evidence, insofar as the court can discern, are directly connected with this other felony of the crime against nature," was merely a statement of what the State's evidence tended to show leading to the court's further instruction that the killing of a human being while committing or attempting to commit a felony is first degree murder without anything further being shown, and did not constitute an expression of opinion on the evidence.

APPEAL by defendant from *James, J.,* at the 30 November 1970 Special Criminal Session of PITT Superior Court.

Defendant Doss was tried and convicted, on an indictment proper in form, of murder in the first degree of William Raymond Pierce, the jury making no recommendation that he be sentenced to life imprisonment. Defendant appeals from a judgment imposing the sentence of death by asphyxiation pursuant to the verdict.

The State offered evidence, summarized except when quoted, as follows: On 3 June 1970 Owen Swanson Doss and

Henry Edward Manning, both of whom were Federal prisoners assigned to a work release unit located at Sandy Ridge near Greensboro, North Carolina, failed to return to their unit, stole an automobile and drove from Greensboro to a point near Goldsboro, North Carolina. There the stolen car ran out of gas. They then stole a truck and drove to a mobile home occupied by Paul Raymond Pierce and his 15-year-old son, William Raymond Pierce, near Winterville in Pitt County.

Doss and Manning spent the night there at the invitation of the elder Pierce, who had known Manning for 10 to 12 years. The next morning Pierce left his son with Doss and Manning and went to work. Manning sent a note by Pierce to his brother, Rufus Manning, who lived near the town of Ayden in Pitt County, and about noon Rufus arrived at the mobile home with a pint of whiskey and about $13 cash. The three men drank this whiskey and most of two more pints which Rufus obtained.

Later in the afternoon, after Rufus left, Doss used a knife and a .22 rifle which he found in the home to force Manning and the Pierce boy to accompany him into the woods behind the house. There he fired the rifle between the boy's legs and ordered him to undress. Young Pierce began to cry, but removed all of his clothes except his socks. Doss then forced Manning to attempt sodomy on him. Manning was unsuccessful. Doss then attempted to commit sodomy on the unwilling boy, and apparently was successful; however, the pathologist could not confirm that there had been any penetration. No semen was found on Doss' clothing, but semen was found on the pants of Manning.

While committing or attempting to commit sodomy, Doss began cutting the boy, lightly at first and then more savagely, causing blood to get all over the clothes of Doss. To get Doss to stop cutting the boy, Manning told Doss that police officers were coming. Doss and Manning left young Pierce in the woods and started out to the road. There they were spotted by two deputy sheriffs who were looking for them because of their escape. The sheriffs ordered them to stop; Manning did so and was apprehended, but Doss escaped. At that time they were about 180 feet from where Pierce's dead body was found the next day.

When Paul Raymond Pierce returned from work that evening, he was stopped by the sheriff and told that Manning had

been captured. Pierce drove on to his home and looked for but could not find his son that night. The next morning Pierce got up early to continue his search, and about 7 a.m. he found the nude body of his dead son in a wooded area behind the mobile home. Officers were notified and a deputy sheriff arrived very quickly. Manning's billfold was found near the body.

Doss was apprehended at 11 a.m. on the same day in the attic of a nearby church. Deputies later returned to the church and found underpants and blue slacks with blood all over them. They also found a white shirt with blood stains on it in a tobacco patch near the church. The blood on the clothes was determined to be type "O"; the deceased and Doss both had type "O" blood.

The church in which Doss was captured collected clothes for the needy and kept them in the room where Doss' underpants and slacks were found. The trousers Doss was wearing when captured had been taken from the clothes stored at the church. The shirt Doss was wearing at the time of the killing had been given to Doss by Manning and had Manning's name written in the collar. This shirt was found in the tobacco field near the church. Doss was wearing a white shirt and blue pants when seen by officers near Pierce's home and in the tobacco patch near the church where he was apprehended.

Dr. West, a pathologist, after describing the various wounds found on the body of the deceased, testified: "Now, in summary of these wounds that I've just described there were twenty-one major incisional and/or puncture wounds. The wound considered to be lethal was the large wound in the left side of the neck disrupting the left internal jugular vein. The immediate cause of death was most likely massive hemorrhage."

Ernest Kornegy and Robert Miller were incarcerated in the Pitt County jail at the same time Doss and Manning were there. Kornegy testified he overheard Manning ask Doss why he killed the Pierce boy. Doss replied that the boy hit him and then he (Doss) began to stab him. Kornegy further stated that Doss said the blood on his clothes had begun to stink so he went into a church. Miller was a cellmate of Manning and testified that he overheard Doss say, "I'm going ahead and admit that I killed the boy"; that Manning then asked him why he killed the boy, and Doss said, "I don't know; just when I hit him that first time I went crazy and when I saw the blood I

guess." Miller further testified that Doss asked Manning who he was celling up with over there and if he had had sex with him. Manning said "no," he did not play that game, and then Doss said if he was over there he would have intercourse with him and would not take "no" for an answer. Miller stated Doss then said, "You know what happened to the last person that said 'no'?" Miller said "no," and Doss said, "Well, where do you think the blood on my clothes came from?" Miller did not say anything, and Doss said, "The boy that said that the last time isn't here."

The defendant did not take the stand and did not offer any testimony.

*Attorney General Robert Morgan and Deputy Attorney General Ralph Moody for the State.*

*M. E. Cavendish and James T. Cheatham for defendant appellant.*

MOORE, Justice.

The record in this case contains 101 exceptions. Defendant, however, in his brief states that the appeal presents 10 questions. These questions will be discussed separately.

Defendant's first assignment of error is the overruling of his motion to quash the bill of indictment. He does not assert that the indictment is insufficient in form or allegation. His contentions are that to subject him to trial under this indictment on the capital offense of first degree murder violates his rights in that punishment by death is a cruel and unusual punishment and in violation of the Constitution of North Carolina and the Constitution of the United States; that the statute under which this defendant is charged with the capital felony of murder is unconstitutional as the same denies the defendant the right to plead guilty to the charges against him and to offer evidence in mitigation thereof; that the statute under which this defendant is charged in the bill of indictment has been declared unconstitutional by the United States Supreme Court; that the present procedural practice of the State of North Carolina in allowing the jury unbridled discretion in sentencing procedures is a violation of the defendant's constitutional rights under the Constitution of North Carolina and the Constitution of the United States; and that the defendant's

constitutional rights under the North Carolina Single Verdict Procedure are denied him, both under the Constitution of North Carolina and the Constitution of the United States.

G.S. 14-17 provides:

> "Murder in the first and second degree defined; punishment.—A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury. All other kinds of murder shall be deemed murder in the second degree, and shall be punished with imprisonment of not less than two nor more than thirty years in the State's prison."

[1] Defendant concedes that the two issues raised by him in his motion to quash the bill of indictment as to the jury having unbridled discretion in death sentence procedures and as to his unitary trial have been decided against him. *McGautha v. State of California* and *Crampton v. State of Ohio,* 402 U.S. 183, 28 L. Ed. 2d 711, 91 S.Ct. 1454 (1971).

[2] Defendant also concedes that as the law presently stands the imposition of the death penalty in North Carolina is not *per se* unconstitutional. *Trop v. Dulles,* 356 U.S. 86, 2 L. Ed. 2d 630, 78 S.Ct. 590 (1958); *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971); *State v. Atkinson,* 278 N.C. 168, 179 S.E. 2d 410 (1971). This Court in numerous cases has rejected the attacks on constitutional grounds upon judgments imposing death sentences pursuant to the procedure followed in the present case. *State v. Westbrook, supra; State v. Atkinson, supra; State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970); *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886 (1970); *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593 (1968).

[3] On 23 July 1971 the Supreme Court of the United States entered memorandum decisions in six North Carolina cases reversing the death penalty imposed by the Superior Court and

affirmed by the Supreme Court of North Carolina, in *Atkinson, Sanders, Roseboro, supra,* and in *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970); *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), and remanded these cases to the Supreme Court of North Carolina for further proceedings, *Atkinson v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 859, 91 S.Ct. 2283 (1971); *Hill v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 860, 91 S.Ct. 2287 (1971); *Roseboro v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 860, 91 S.Ct. 2289 (1971); *Williams v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 860, 91 S.Ct. 2290 (1971); *Sanders v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 860, 91 S.Ct. 2290 (1971); *Atkinson v. North Carolina,* 403 U.S. 948, 29 L. Ed. 2d 861, 91 S.Ct. 2292 (1971). This Court remanded each of said cases to the Superior Court where tried, with an order that, pursuant to the mandate of the Supreme Court of the United States, the Superior Court in each case enter judgment that the defendant be imprisoned for life in the State's prison. *State v. Atkinson,* 279 N.C. 386, 183 S.E. 2d 106 (1971); *State v. Hill,* 279 N.C. 371, 183 S.E. 2d 97 (1971); *State v. Roseboro,* 279 N.C. 391, 183 S.E. 2d 108 (1971); *State v. Williams,* 279 N.C. 388, 183 S.E. 2d 106 (1971); *State v. Sanders,* 279 N.C. 389, 183 S.E. 2d 107 (1971); *State v. Atkinson,* 279 N.C. 385, 183 S.E. 2d 105 (1971). In the decisions entered by the Supreme Court of the United States, that Court as authority for its decision in each case cited *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S.Ct. 1209 (1968), and *Pope v. United States,* 392 U.S. 651, 20 L. Ed. 2d 1317, 88 S.Ct. 2145 (1968). Neither of these cases is controlling in the case at bar. Prior to the commission of the crime charged in this case and to the trial, G.S. 15-162.1 was repealed. Under that statute any person accused of first degree murder could have tendered in writing a plea of guilty of said crime, and the State with the approval of the court could have accepted such plea, in which case punishment was life imprisonment. G.S. 15-162.1 was similar to the Federal Kidnapping Act, 18 U.S.C. § 1201(a), the death penalty of which was condemned in *Jackson,* and the Federal Bank Robbery Act, 18 U.S.C. § 2113(e), the death penalty of which was condemned in *Pope.* With the repeal of G.S. 15-162.1, this infirmity insofar as the death penalty in the felony of murder in the first degree, or burglary in the first degree, or arson, or rape in North Carolina was removed.

There is, therefore, no merit in defendant's first assignment of error.

[4] Defendant's next assignment of error relates to the sustaining of the State's challenges for cause to 30 prospective jurors, the basis for each challenge being the prospective juror's statement on *voir dire* concerning his or her inability to return a verdict in any case which would result in the imposition of the sentence of death. The *voir dire* examination of each prospective juror is set forth in detail in the record. It discloses that no juror was excused because of his or her expression of a general objection to the death penalty or of moral or religious scruples against inflicting it. While there were variations in the answers of these prospective jurors, in each instance the answer indicated that in no case would the juror return a verdict that would result in the imposition of the death sentence. Here, as said in *State v. Sanders, supra,* at 609, 174 S.E. 2d at 495: "It is perfectly clear from these answers that each of these prospective jurors, before hearing any of the evidence, had already made up his mind that he would not return a verdict pursuant to which the defendant might lawfully be executed whatever the evidence might be."

Under *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S.Ct. 1770 (1968), a venireman should be willing to consider all the penalties provided by State law and he should not be irreparably committed before the trial has begun to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceeding. Accord: *Boulden v. Holman,* 394 U.S. 478, 22 L. Ed. 2d 433, 89 S.Ct. 1138 (1969); *State v. Westbrook, supra; State v. Sanders, supra.* The record here indicates that the jurors excused were committed to vote against the death penalty. The assignment of error is overruled.

[5, 6] Defendant next contends that the trial court committed reversible error in permitting witnesses to testify that defendant was an escaped prisoner. The witness D. E. Smithey was allowed to testify, over objection, that both Manning and Doss were inmates of the Correctional Department, assigned to the work release program, and that on 3 June 1970 they went out on work release and did not return to the Sandy Ridge Camp where they were supposed to spend the night. Similar evidence was given without objection by Manning. Manning's evidence

would have cured any error. 1 Strong, N. C. Index 2d, Appeal and Error § 48, and cases therein cited. Moreover, in *State v. Williams, supra* at 711-12, 174 S.E. 2d at 509, this Court said:

" . . . The term 'work release' does not relate to any specific crime or the degree or nature of any crime. While it is undoubtedly the rule of law that evidence of a distinct substantive offense is inadmissible to prove another independent crime, this rule is subject to well-established exceptions where the two crimes are disconnected and not related to each other. Proof of the commission of other like offenses to show a chain of circumstantial evidence with respect to the matter on trial or to show the identity of the person charged is competent. *State v. Christopher*, 258 N.C. 249, 128 S.E. 2d 667; *State v. Summerlin*, 232 N.C. 333, 60 S.E. 2d 322; *State v. Dail*, 191 N.C. 231, 131 S.E. 573; *State v. Simons*, 178 N.C. 679, 100 S.E. 239; *State v. Weaver*, 104 N.C. 758, 10 S.E. 486. The testimony that defendant was on 'work release' was competent as proof of the identity of defendant and as a fact in the chain of events leading up to the commission of the alleged crime."

This assignment is without merit.

[7] Defendant's next assignment of error relates to the introduction of photographs of the body of the deceased, defendant contending that it was error to allow the introduction of these photographs, that they were not necessary in the trial of the case, were highly inflammatory, were poignant and had no probative value in respect to any issue for determination by the jury in the trial of this case. The jury was properly instructed that the photographs in question were allowed in evidence for the sole purpose of illustrating the testimony of the witness Deputy Sheriff T. D. Burney, and not as substantive evidence. The photographs were competent for that purpose. *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916 (1955); *State v. Perry*, 212 N.C. 533, 193 S.E. 727 (1937). In *State v. Atkinson*, 275 N.C. at 311, 167 S.E. 2d at 255, this Court said:

" . . . The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence, when properly authen-

ticated as a correct portrayal of conditions observed by and related by the witness who uses the photograph to illustrate his testimony. *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; Stansbury, North Carolina Evidence, 2d Ed., § 34. For a collection of authorities to the same effect from other jurisdictions, see Annot., 73 A.L.R. 2d 769."

[8-10]   Defendant next contends that the court erred in failing to make findings of fact concerning the admissibility of statements made by defendant until approximately 17 days following the completion of the trial. Defendant further contends that defendant at the time was an indigent and that the State failed to produce and offer into evidence any written waiver signed by defendant waiving his constitutional rights and that even a written waiver could not be introduced in the trial of a capital felony case by reason of the express prohibition against such waiver provided in G.S. 7A-457(a). The witness James R. Briley testified that after defendant was arrested and placed in the county jail, he was orally advised of his constitutional rights but was not asked to sign any waiver. He was then asked to identify the white shirt, underpants, and blue pants which the State contended defendant was wearing at the time of the commission of the crime. Defendant identified these as belonging to him but refused to make further comment. The in-custody interrogation was a critical stage in the proceeding, at which time the defendant was entitled to counsel under G.S. 7A-451(b)(1). In a capital case such as this, defendant could not waive counsel. G.S. 7A-457(a). The court, therefore, erred in admitting the statement made by defendant identifying the clothing as his. *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971). "The question is whether there is a possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 11 L. Ed. 2d 171, 84 S.Ct. 229 (1963). In the present case the clothing in question had been identified as belonging to defendant by his accomplice Manning. The shirt had been identified by one of the officers as similar to one on the defendant when he was seen in a tobacco field near the church where he was arrested. The shirt was later found in that field. The underpants and pants in question were found in the church where defendant was hiding. In light of this evidence identifying the

clothing and the overwhelming evidence of defendant's guilt presented by the State, we hold that this error was clearly harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S.Ct. 1726 (1969) ; *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824 (1967) ; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971) ; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970). Having determined that it was error, though harmless, to admit the statement, it is not necessary to decide whether or not it was error for the court to make its findings of fact after the trial. We note, however, it is better practice for the court to make such findings at some stage during the trial, preferably at the time the statement is tendered and before it is admitted.

[11] Defendant next contends that the court erred in allowing Deputy Sheriff Burney to testify concerning a statement made to him by Henry Edward Manning in connection with this case. The statement made by Manning to Burney was offered for the purpose of corroborating Manning, and the jury was instructed that such statement was only to be considered for that purpose. The statement was recorded on tape; however, the tape itself was not played in the presence of the jury. Instead Burney read from a written transcript of the recording which was typed by the secretary of Manning's attorney. Burney testified that he played the tape recording and read along with the written transcript to make sure that they were the same, and that they were identical. He further testified that the statement from which he read was correct, that from his independent recollection nothing was left out of the statement and nothing was added. In *State v. Godwin,* 267 N.C. 216, 147 S.E. 2d 890 (1966), citing *State v. Walker,* 251 N.C. 465, 112 S.E. 2d 61 (1960) and *Olmstead v. United States,* 277 U.S. 438, 72 L. Ed. 944, 48 S.Ct. 564 (1928), the Court permitted the prosecution to introduce tape recordings allegedly containing telephone conversations by the defendant with a witness Mrs. Wall. Mrs. Wall testified the recordings as being the voice of defendant and stated that they were a fair and accurate representation of the conversations she had had with defendant. In the instant case the witness testified that the typed statement was a true and correct transcript of the tape recording made by Manning, and that the tape recording was the voice of Manning and was a fair and accurate representation of the statement made by Manning. The court properly allowed the

witness to read from this transcript. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970). This assignment is overruled.

**[12]** At the close of the State's evidence defendant moved for judgment as of nonsuit, which motion was denied. Defendant rested, and renewed his motion for judgment as of nonsuit. Both motions were denied. There was ample evidence that defendant murdered the deceased while engaged in the act of sodomy. The court properly submitted the case to the jury.

**[13]** Defendant in apt time tendered a request for jury instructions as to the law of the case and a request for charge as to the contentions of the defendant. Some of the instructions requested by defendant were manifestly improper, and those which were proper were given by the court. Defendant contends that the court spent more time in stating the contentions of the State than in stating those for the defendant. Although the record does not so reflect, to have done so would not have been error. The State introduced extensive evidence, while defendant offered none. *State v. Roman*, 235 N.C. 627, 70 S.E. 2d 857 (1952); *State v. Davenport*, 227 N.C. 475, 42 S.E. 2d 686 (1947); *State v. Jessup*, 219 N.C. 620, 14 S.E. 2d 668 (1941). The court fully charged as to the law in the case and covered those requests for instructions submitted by defendant which were proper.

**[14]** Defendant specifically contends the court erred in restricting the jury to the return of one of three verdicts— guilty of murder in the first degree, or guilty of murder in the first degree with recommendation of life imprisonment, or not guilty—without including second degree murder. Defendant contends that the evidence as to his intoxication is sufficient to require the submission of the question of second degree murder and that the failure of the court to do so was error.

Speaking to the question of intoxication, in *State v. Murphy*, 157 N.C. 614, 72 S.E. 1075 (1911), Justice Hoke (later Chief Justice) said:

" . . . It is very generally understood that voluntary drunkenness is no legal excuse for crime, and the position has been held controlling in many causes in this State and on indictments for homicide. . . . The principle, however, is not allowed to prevail where, in addition to the overt act, it is required that a definite specific intent be estab-

lished as an essential feature of the crime. In Clark's Criminal Law, p. 72, this limitation on the more general principle is thus succinctly stated: 'Where a specific intent is essential to constitute crime, the fact of intoxication may negative its existence.' Accordingly, since the statute dividing the crime of murder into two degrees and in cases where it becomes necessary, in order to convict an offender of murder in the first degree, to establish that the 'killing was deliberate and premeditated,' these terms contain, as an essential element of the crime of murder 'a purpose to kill previously formed after weighing the matter' . . . a mental process, embodying a specific, definite intent, and if it is shown that an offender, charged with such crime, is so drunk that he is utterly unable to form or entertain this essential purpose he should not be convicted of the higher offense. It is said in some of the cases, and the statement has our unqualified approval, that the doctrine in question should be applied with great caution. . . . "

See *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560 (1968).

In *State v. Maynard*, 247 N.C. 462, 469, 101 S.E. 2d 340, 345 (1958), Justice Parker (later Chief Justice) said:

"Where a murder is committed in the perpetration or attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. . . . "

In such cases the State is not put to the proof of premeditation and deliberation. The law presumes them. G.S. 14-17; *State v. Lee*, 277 N.C. 205, 176 S.E. 2d 765 (1970) ; *State v. Fox, supra; State v. Hill, supra; State v. Crawford*, 260 N.C. 548, 133 S.E. 2d 232 (1963).

The evidence in the present case tends to show that defendant was drinking heavily at the time defendant, Manning, and the Pierce boy went into the woods. There is no evidence tending to show that defendant Doss did not know what he was doing, both in the planning and the execution of the crime against nature, a crime which he consummated. Indeed, the evidence is not sufficient to make available to him the defense of intoxication. There is no prejudicial error in the court's limiting the verdicts as above indicated. *State v. Bunton*, 247 N.C. 510, 101 S.E. 2d 454 (1958).

In *State v. Streeton,* 231 N.C. 301, 305, 56 S.E. 2d 649, 652 (1949), this Court said:

"It is evident that under this statute [G.S. 14-17] a homicide is murder in the first degree if it results from the commission or attempted commission of one of the four specified felonies or of any other felony inherently dangerous to life, without regard to whether the death be intended or not."

Without deciding whether every felony not specified in the statute must be inherently dangerous to life, surely the crime committed in the instant case where a young 15-year-old boy, under threat of gunfire and knife, was compelled to submit to an act of sodomy by the defendant was a crime as atrocious and as inherently dangerous as the specified felonies in the statute.

[15] Defendant further contends that the court failed to define crime against nature. In this connection the court charged:

"The law in our State as set forth in the General Statutes provides that if any person shall commit the crime against nature with mankind or beast, he shall be guilty of a felony. . . . Now, our courts have held that the felony of crime against nature is sexual intercourse contrary to the order of nature. It includes all kindred acts of bestial character whereby degrading and perverted sexual desires are sought to be gratified. It includes unnatural intercourse between male and male and other forms of unnatural intercourse."

This definition was suffficient without going into details. *State v. Cox,* 272 N.C. 140, 157 S.E. 2d 717 (1967) ; *State v. Harward,* 264 N.C. 746, 142 S.E. 2d 691 (1965).

[16] Finally, defendant contends the court erred in charging the jury as follows:

"The evidence in this case tends to show that whatever person or persons it was who committed this crime and all the inferences in connection with the evidence, insofar as the court can discern, are directly connected with this other felony of the crime against nature."

This portion of the charge was simply a statement of what the State's evidence tended to show and was a recapitulation of

evidence leading to the explanation by the court that the killing of a human being while committing or attempting to commit a felony is first degree murder without anything further being shown. The court next charged:

> "Now, as I have stated the law says that any killing of a human being by a person committing or attempting to commit a felony, in this case the crime against nature, is first degree murder without anything further being shown, and I charge you, therefore, that in order for you to find the defendant guilty of this offense the State must prove beyond a reasonable doubt by the evidence two things: First, that William Raymond Pierce's death was a natural and probable result of the defendant's act or acts; and second, that the defendant Doss did these acts, these murderous acts while attempting, while committing or attempting to commit the felony of crime against nature."

Taken together the quoted paragraphs were clear, could not have misled the jury, and were without prejudicial error.

This was a horrible and barbaric crime committed without excuse. Apparently the defendant, a sadist, inflicted torture and murder to satisfy his own unnatural desires.

A careful review of the record fails to disclose any prejudicial error.

No error.