STATE OF NORTH CAROLINA v. LIONEL ANDERSON

No. 13

(Filed 10 May 1972)

1. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— jurors opposed to death penalty — excusal for cause**

    The trial court in a first degree murder prosecution properly excused six jurors for cause when each stated on *voir dire* examination that he would not vote in favor of the death penalty under any circumstances no matter how aggravated the case and no matter what the facts may be.

2. **Criminal Law § 92— consolidation of murder cases for trial**

    The trial court properly consolidated for trial indictments charging defendant with the first degree murders of his wife and mother-in-law.

3. **Criminal Law § 166— abandonment of assignments of error**

    Assignment of error is deemed abandoned where appellant's brief sets out no reason or argument and cites no authority in support thereof. Supreme Court Rule 28.

4. **Criminal Law § 87; Witnesses § 1— list of State's witnesses — testimony by witness not listed**

    In a first degree murder prosecution wherein the State furnished defense counsel a list of State's witnesses prior to selection of the jury, the trial court did not abuse its discretion in allowing the State to present a witness whose name was not on the list, where each juror stated upon interrogation by the court that he did not know the witness by sight or by name, and the court found that the name of the witness was not available to the State at the time the jury was selected and that defendant had suffered no prejudice by the fact that the name of the witness was not furnished prior to the jury selection.

5. **Criminal Law § 97— additional evidence after jury arguments**

    The trial court did not abuse its discretion in allowing the State to recall two witnesses who had previously been examined and to elicit additional evidence from them after the State and defendant had rested and all arguments to the jury had been made, where defendant was given an opportunity to offer additional rebuttal evidence and the State's additional evidence was inconsequential.

6. **Constitutional Law § 29; Criminal Law § 135; Homicide § 31— first degree murder — death penalty — constitutionality — former G.S. 15-162.1**

    Sentences of death could not constitutionally be imposed on defendant for crimes of first degree murder committed while the statute allowing a defendant to plead guilty to a capital crime and receive a life sentence, G.S. 15-162.1, was in effect, since during that time

the death penalty applied only to those defendants who asserted their constitutional right to plead not guilty; consequently, sentences of death imposed on defendant for first degree murder are vacated and the cases are remanded to the superior court for imposition of sentences of life imprisonment.

Justices HIGGINS and LAKE dissent.

DEFENDANT appeals from judgments of *Peele, J.,* September 1971 Session of MARTIN Superior Court.

Defendant was charged in separate bills of indictment with the first degree murder of Fannie Alice Whitfield, his mother-in-law, and the first degree murder of Joyce Janet Anderson, his wife, on 29 June 1971. Upon arraignment defendant entered pleas of not guilty. The cases were thereupon consolidated for trial, over defendant's objection, and a jury was selected and empaneled.

The State's evidence tends to show the facts narrated below.

Defendant Lionel Anderson and his wife Joyce Janet Anderson lived in Greenville, North Carolina. Joyce was the daughter of Willie Herbert Whitfield and Fannie Alice Whitfield who lived near Williamston on Highway No. 17 in Martin County. On 29 June 1971 defendant called his wife's father to come after her. Mr. Whitfield went to Greenville and took his daughter to his home near Williamston. That same afternoon defendant left Greenville taking his .20 gauge shotgun with him. He went to the Whitfield home, asked for his wife, and was told she was at the store. He left and drove toward the store where he saw his wife driving a car and thereupon turned around and followed her back to the Whitfield home. He parked his car in the backyard and talked to his wife for thirty or forty minutes. Defendant and his wife had been fussing since Tuesday morning, June 27, and defendant was trying to persuade her to return home. She told him she was going to Baltimore to live with the parents of a man who was the father of a baby born to her before her marriage to defendant. Defendant thereupon shot his wife Joyce Anderson with the .20 gauge shotgun. Mrs. Whitfield came to the back door, stepped out on the ground and defendant shot her in the stomach with his shotgun. He reloaded, stepped forward and shot her again and she fell to the ground near the back steps. Meanwhile, Joyce Anderson ran toward a neigh-

bor's house and the defendant followed her. Joyce stumbled and fell in the yard, and defendant stood over her with the shotgun and fired another shot into her body. Defendant then walked toward his car in the Whitfield yard and saw Mrs. Whitfield moving on the ground. He approached her and said, "You are the cause of all this," placed his gun against her neck and fired again. As defendant approached his car to drive away he was shot twice in the back by Melvin Whitley, a nineteen-year-old boy who was staying at the Whitfield home. Numerous shotgun pellets entered his body.

The coroner found both women dead when he arrived on the scene. He testified that Mrs. Whitfield had a large wound about the size of a quarter under her right breast and a large wound in her stomach below the navel about the size of a baseball, and a large wound behind her left ear. Joyce Anderson had a large wound near the top of her chest on the left side near the heart region and twenty-five to thirty small holes in her arm. When the coroner arrived the bodies were still lying in the yard where they had fallen.

Defendant drove at a high rate of speed to his mother's home in Greenville where he was arrested, taken to the hospital for treatment of his wounds which apparently were not serious, and lodged in jail. With his counsel present and after being fully warned of his constitutional rights, defendant made a statement to the officers in which he related his family difficulties and said he remembered shooting his wife only once and Mrs. Whitfield only once. Defendant identified the shotgun he used.

Defendant testified as a witness in his own behalf. His testimony shows that he was thirty-six years of age, had served as a special policeman in the City of Washington, D. C. for two years, and had never been in any trouble. On Monday preceding June 29 he had seen a man running from his home and this had caused serious arguments between him and his wife. On June 29 he called Mr. and Mrs. Whitfield to come to his home and they came. The Whitfields decided to take their daughter home. After they had gone defendant began drinking. He tried unsuccessfully to call his wife several times and finally decided to drive to Williamston to talk with her. The shotgun was already in the trunk of his car, but he took it out and laid it on the back seat when he left the house. When he knocked

on the door at the Whitfield residence he was advised that his wife had gone to the store. He went looking for her and followed her back to the Whitfield home. She took her two babies in the house and returned to the backyard where they talked. Defendant had consumed ten cans of beer and about half of a fifth of liquor. He begged his wife to go back home with him, and she told him she was going to Baltimore to stay with the mother of a boy who had fathered her baby before she married defendant. Defendant then testified that he remembered little of what happened thereafter; that he doesn't remember how many times he fired or who he shot on that occasion; that he didn't go to Williamston to hurt anyone.

In each case the jury convicted the defendant of murder in the first degree, and in each case the court pronounced a death sentence. Defendant appealed to the Supreme Court assigning errors discussed in the opinion.

*Clarence W. Griffin, Attorney for defendant appellant.*

*Robert Morgan, Attorney General, and Ralph Moody, Special Counsel, for the State of North Carolina.*

HUSKINS, Justice.

[1] Defendant assigns as error that six jurors were excused for cause when each stated on voir dire examination that he would not vote in favor of the death penalty under any circumstances no matter how aggravated the case and no matter what the facts may be. We said in *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971), that "a venireman should be willing to consider all the penalties provided by State law and he should not be irreparably committed before the trial has begun to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceeding." This accords with the holding in *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968). The six veniremen in question were properly excused because they were committed to vote against the death penalty before the trial commenced. This assignment is overruled.

[2] Defendant's second assignment is addressed to the consolidation of the two murder cases for trial. This assignment obviously has no merit. When a defendant is charged with crimes

of the same class and the offenses are not so separate in time or place and not so distinct in circumstances as to render a consolidation unjust and prejudicial, consolidation is authorized in the discretion of the court by G.S. 15-152. *State v. White,* 256 N.C. 244, 123 S.E. 2d 483 (1962) ; *State v. Johnson,* 280 N.C. 700, 187 S.E. 2d 98 (1972).

[3]  Appellant's brief sets out no reason or argument and cites no authority in support of defendant's third assignment of error. The assignment is therefore deemed abandoned under Rule 28, Rules of Practice in the Supreme Court. *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781 (1961).

[4]  The State furnished defense counsel a list of State's witnesses prior to selection of the jury. However, the witness Alton Daniels was unknown to the solicitor and his name was not on the list. The solicitor learned during the trial that Alton Daniels was an eyewitness to the shooting. He informed the court of these facts and was allowed to examine Daniels as a witness for the State over defendant's objection. This constitutes defendant's fourth assignment of error.

The record reveals that before this witness was allowed to testify the court interrogated the jurors and each juror stated that he did not know Alton Daniels by sight or by name. The court found that the name of the witness was not available to the State at the time the jury was selected and that defendant had suffered no prejudice from the fact that the name of this witness was not furnished prior to selection of the jury. The court thereupon in its discretion permitted the witness to testify, and we perceive no error therein. It was a discretionary matter not reviewable on appeal absent abuse of discretion, and no abuse of discretion is shown.

Defendant's fifth assignment of error is based on denial of his motion for nonsuit at the close of the State's evidence. His sixth assignment of error is based on denial of his motion for a directed verdict of not guilty at the conclusion of all the evidence. These assignments are formal and are overruled without discussion.

[5]  After the State and defendant had rested their case and after all arguments to the jury had been made, the court in its discretion allowed the State to recall two witnesses who had previously been examined and elicit from them additional evi-

State v. Anderson

dence. Defendant objected to this procedure, and this constitutes his seventh assignment of error.

It is discretionary with the trial court to permit the introduction of additional evidence after both parties have rested and arguments have been made to the jury, but the opposing party must be given an opportunity to offer additional evidence in rebuttal. *State v. Harding,* 263 N.C. 799, 140 S.E. 2d 244 (1965) ; *State v. Jackson,* 265 N.C. 558, 144 S.E. 2d 584 (1965). The record shows that defendant was given an opportunity to offer additional evidence in rebuttal but declined to do so. Furthermore, it is noted that the additional evidence in question was inconsequential and could not have prejudiced defendant. Defendant's seventh assignment of error is overruled.

The State again rested its case, and defendant again moved for a directed verdict of not guilty. Denial of his motion constitutes his eighth assignment of error. It has no merit and is overruled without discussion.

[6] Defendant's ninth and tenth assignments of error relate to the same legal question and will be treated jointly. By these assignments defendant challenges the constitutionality of the death sentences imposed upon him and contends that these cases against him should be remanded to the Superior Court of Martin County for imposition of a life sentence in each case. We think defendant's position is sound for the reasons set out below.

On 23 July 1971 the United States Supreme Court entered memorandum decisions in the following North Carolina cases reversing the death sentence imposed by the trial court and affirmed by this Court, to wit: *Atkinson v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283; *Hill v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2287; *Roseboro v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2289; *Williams v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290; *Sanders v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290; and *Atkinson v. North Carolina,* 403 U.S. 948, 29 L.Ed. 2d 861, 91 S.Ct. 2292. As authority for its decision in each case, that Court cited *United States v. Jackson,* 390 U.S. 570, 20 L.Ed. 2d 138, 88 S.Ct. 1209 (1968), and *Pope v. United States,* 392 U.S. 651, 20 L.Ed. 2d 1317, 88 S.Ct. 2145 (1968).

*Jackson* and *Pope* stand for the proposition that every defendant has a constitutional right to plead not guilty and that the Federal Constitution does not permit the establishment of a death penalty applicable only to those defendants who assert their constitutional right to contest their guilt before a jury. At the time *Atkinson, supra,* and the other five North Carolina cases arose, the death penalty in North Carolina was expressed in G.S. 14-17 and G.S. 15-162.1.

G.S. 14-17 provides in pertinent part as follows: "A murder which shall be perpetrated . . . by any . . . willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

G.S. 15-162.1 provides in pertinent part as follows: "(a) Any person, when charged in a bill of indictment with the felony of murder in the first degree, or burglary in the first degree, or arson, or rape, when represented by counsel, whether employed by the defendant or appointed by the court under G.S. 15-4 and G.S. 15-5, may, after arraignment, tender in writing, signed by such person and his counsel, a plea of guilty of such crime; and the State, with the approval of the court, may accept such plea. . . . (b) In the event such plea is accepted, the tender and acceptance thereof shall have the effect of a jury verdict of guilty of the crime charged with recommendation by the jury in open court that the punishment shall be imprisonment for life in the State's prison; and thereupon, the court shall pronounce judgment that the defendant be imprisoned for life in the State's prison."

The decisions in *Jackson* and *Pope* apparently condemned as unconstitutional the language of G.S. 15-162.1 because, with the language of that statute in effect, our death penalty applied only to those defendants who asserted their constitutional right to plead not guilty. To correct that infirmity, G.S. 15-162.1 was repealed by Chapter 117 of the 1969 Session Laws, effective 25 March 1969. Such repeal left in effect, applicable to all alike, the provisions of G.S. 14-17; and this Court has consistently upheld the constitutionality of that statute. *State v.*

*Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971) ; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971). However, for some obscure reason, the General Assembly reenacted the provisions of G.S. 15-162.1 by Chapter 562 of the 1971 Session Laws, effective 15 June 1971. Then, apparently to correct the error, G.S. 15-162.1 was again repealed by enactment of Chapter 1225 of the 1971 Session Laws, effective 21 July 1971. It thus appears that from 15 June 1971 to 21 July 1971 the death penalty provisions of our statutes once again applied only to those defendants who asserted their right to plead not guilty. *United States v. Jackson, supra; Pope v. United States, supra; Atkinson v. North Carolina, supra.* Here, the murders were committed on 29 June 1971 while the provisions of G.S. 15-162.1 were in effect, and therefore the death sentences in these cases are unconstitutional and cannot be carried out. *Hill v. North Carolina, supra* [403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2287].

Applying the constitutional principles enunciated in *Jackson* and *Pope,* and following the procedure adopted by this Court in *State v. Hill,* 279 N.C. 371, 183 S.E. 2d 97 (1971), the judgments of the Superior Court of Martin County, insofar as they imposed the death penalty, are reversed. These cases are remanded to the Superior Court of Martin County with directions to proceed as follows:

1. The presiding judge of the Superior Court of Martin County will cause to be served on the defendant Lionel Anderson, and on his counsel of record, notice to appear during a session of said superior court at a designated time, not less than ten days from the date of the order, at which time, in open court, the defendant Lionel Anderson being present in person and being represented by his counsel, the presiding judge, based on the verdicts of guilty of murder in the first degree returned by the jury at the trial of these cases at the September 1971 Session, will pronounce judgments that the defendant Lionel Anderson be imprisoned for life in the State's prison, to be served concurrently or consecutively as the judge in his discretion may determine.

2. The presiding judge of the Superior Court of Martin County will issue a writ of habeas corpus to the official having custody of the defendant Lionel Anderson to produce him in

open court at the time and for the purpose of being present when the judgments imposing life imprisonment are pronounced.

Remanded for judgment.

Justices HIGGINS and LAKE dissent.