STATE OF NORTH CAROLINA v. JESSE THURMAN FOWLER

No 34

(Filed 10 April 1974)

**1. Criminal Law § 166— abandonment of assignment of error**

Assignments of error not brought forward and argued in the brief are deemed abandoned. Supreme Court Rule 28.

**2. Criminal Law § 114; Homicide § 25— instructions on premeditation and deliberation — absence of provocation**

The trial judge did not express an opinion that there was no evidence of provocation in a first degree murder case when he instructed the jury that in determining whether there was premeditation and deliberation the jury could consider evidence "of the absence of provocation."

**3. Criminal Law § 114; Homicide § 25— manner of summarizing evidence — no expression of opinion on provocation**

In this first degree murder case, the manner in which the court summarized the evidence did not indicate to the jury that there was no provocation in the case.

**4. Criminal Law § 114; Homicide § 28— plea of self-defense — State's contention — no expression of opinion**

The trial court did not express an opinion on the evidence in stating the State's contention upon defendant's plea of self-defense that there was no evidence that the victim was assaulting defendant or threatening him with an assault and that there was no circumstance from which defendant might reasonably have believed that he was about to suffer death or great bodily harm.

**5. Criminal Law § 118; Homicide § 28— instructions — contention of defendant — elapse of time between fight and shooting**

In this first degree murder case, the court's instruction that defendant contended he saw deceased "a fairly brief time" after deceased jumped on defendant and broke his nose was in accord with defendant's evidence that 30 minutes had elapsed and was favorable to defendant.

**6. Criminal Law § 163— exceptions to charge**

Exceptions to the charge which fail to point out specific portions of the charge as erroneous are ineffectual as bases for assignments of error.

**7. Criminal Law § 163— assignments of error to charge**

Assignments of error to the charge should quote the portion of the charge to which defendant objects, and assignments of error based on failure to charge should set out appellant's contentions as to what the court should have charged.

State v. Fowler

8. **Homicide § 27— instruction on manslaughter — verdict of first degree murder — harmless error**

In a homicide case in which the court instructed the jury that it could find defendant guilty of first degree murder, second degree murder, manslaughter or not guilty, the court erred in failing to instruct the jury in the charge on manslaughter that if the State failed to satisfy the jury from the evidence beyond a reasonable doubt that defendant shot the victim and thereby proximately caused his death, the jury should return a verdict of not guilty; however, such error was harmless since the court properly instructed the jury as to both degrees of murder and the jury found defendant guilty of first degree murder.

9. **Homicide § 8— effect of intoxication**

If a person on trial for first degree murder was so drunk at the time he committed the homicide that he was utterly incapable of forming a deliberate and premeditated purpose to kill, an essential element of first degree murder is absent and the offense is reduced to second degree murder.

10. **Homicide § 28— failure to instruct on intoxication**

There was not sufficient evidence of intoxication to require an instruction as to the law on intoxication as a defense to murder in the first degree where all the evidence, except defendant's exculpatory statement to a detective, was to the effect that defendant was not drunk or intoxicated when he shot the victim.

11. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— jurors opposed to death penalty — excusal for cause**

If a prospective juror in a capital case states that under no circumstances could he vote for a verdict that would result in the imposition of the death penalty no matter how aggravated the case and regardless of the evidence shown, the trial court can properly dismiss the juror upon a challenge for cause.

12. **Constitutional Law § 29; Criminal Law § 135; Jury § 6— questioning jurors — views on capital punishment**

In a capital case it is proper to inquire into a prospective juror's views on capital punishment in order to determine his competency to serve in an impartial manner.

13. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— stipulation — prospective jurors — death penalty views — challenge for cause**

Stipulation that two jurors were excused for cause "because of their views on capital punishment" does not provide an adequate basis for determining whether such jurors were properly excused under *Witherspoon v. Illinois* and decisions of the N. C. Supreme Court.

14. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— death penalty views — excusal of jurors — transcript of voir dire — peremptory challenges**

Defendant's contention that the trial court erred in excusing two jurors for cause because of their views on capital punishment and in failing to order that a transcript of the jury *voir dire* examination

be transcribed and included in the case on appeal is without merit where the Supreme Court *ex mero motu* ordered that the *voir dire* examination be transcribed and made a part of the case on appeal, and such transcript discloses that no prospective juror was excused for cause by reason of his views on capital punishment but that two jurors who expressed some reservation as to capital punishment were excused peremptorily by the State.

15. **Constitutional Law § 36; Criminal Law § 135— death penalty — cruel and unusual punishment**

   The death penalty for first degree murder is not cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the U. S. Constitution and Article I, §§ 19, 24 and 27 of the N. C. Constitution.

   Chief Justice BOBBITT and Justices HIGGINS and SHARP dissenting as to death sentence.

APPEAL by defendant from *McKinnon, J.,* at the 24 September 1973 Session of WAKE Superior Court.

On an indictment proper in form, defendant was tried and convicted of murder in the first degree of John Griffin. Defendant appeals from a judgment imposing a sentence of death.

The State's evidence tends to show that around 6:30 or 7:00 o'clock on the evening of 1 July 1973 John Griffin, the deceased, was with his two children in front of a neighbor's house at 1300 Branch Street in Raleigh, North Carolina. While Griffin was visiting with the neighbor, a car in which defendant was a passenger drove up and stopped fairly close to where Griffin was standing. Griffin walked over to the car, snatched the car door open, and said to defendant, "I don't want to fight you no more. I want you to go on home." Griffin then turned to the driver, Johnny Fraizer Dolby, and asked him to take defendant home, and Dolby agreed to do so. After Dolby had driven only a short distance down the street, defendant insisted that he stop the car and let him out. Dolby complied with defendant's request, and defendant got out of the car and started walking toward Griffin. When the two were fairly close, defendant pulled a pistol and shot at Griffin twice, hitting him once in the stomach. Griffin fell and defendant left the scene of the shooting and went home. At the time defendant shot Griffin, Griffin had no weapon of any kind in his hand and no weapon was found on or near his body after the shooting.

The police were called and Griffin was taken to a hospital where later that night he died as a result of the gunshot wound.

State v. Fowler

A few hours after the shooting, defendant, upon the urging of his wife and a friend, went to the Raleigh Police Department to explain what had happened. At the police station defendant was informed of his constitutional rights and indicated that he understood them and that he did not want an attorney present. He also signed a waiver of rights form that was introduced at trial. Defendant said that he wanted the police to know that he was drunk when he shot Griffin. According to Detective D. C. Williams of the Raleigh Police Department, defendant explained to the police that he had gotten drunk on 30 June 1973 and had gotten up the next morning, 1 July 1973, and started drinking again. Defendant's statement to the police also revealed that on 1 July 1973 defendant had gone over to Sylvester Jones' house where a crap game was in progress. There defendant and Griffin got into an argument about a ten dollar bill, but nothing happened as a result of this argument. Around 6 p.m. defendant left the game and went to King's Lounge on Rock Quarry Road. Griffin arrived at the Lounge later, and shortly after Griffin's arrival he and defendant resumed their argument about the ten dollar bill. Griffin asked defendant to come outside with him, and as defendant was walking out, Griffin hit him in the nose, knocking defendant down and breaking his nose. Defendant told the police that at this time he had a .38 caliber pistol in his pocket. He left the King's Lounge and went to his home for awhile, and then decided to catch a ride and go see a friend who lived in the vicinity where the shooting occurred. When he arrived in the area, he saw Griffin, and Griffin came over to the car and wanted to fight defendant again. Defendant then persuaded Dolby, the driver, to let him out so that Dolby would not get into any trouble. When defendant got out he started walking away but Griffin came toward him. Defendant shot at him but missed, then shot again and hit him.

All the State's witnesses testified that although defendant's eyes were bloodshot at the time of the shooting incident and when he made his statement, he appeared to be in complete control of his mental and physical faculties and was not drunk.

Much of defendant's evidence tended to corroborate the statement defendant had given to the police on the night following the shooting, except as to that part when he stated he was drunk. His evidence further tended to show that he and some

of his friends had planned to go fishing on the day of the shooting, and that it was defendant's custom to carry a pistol with him when he went fishing to shoot snakes; that he had his .38 caliber pistol with him all day for that purpose and had not gotten it after his scuffle with Griffin at the King's Lounge. Defendant also testified that immediately after his fight with Griffin at the King's Lounge, Charles Gene Rogers came up to him and told him, "Man, you better go ahead on because John Griffin is trying to get a pistol to kill you." Rogers corroborated this testimony.

Defendant testified concerning the events leading up to the shooting substantially as follows: Before his fight with Griffin he had been drinking some beer at the King's Lounge. Following the fight defendant decided to go over to an apartment complex known as Walnut Terrace to see his sister-in-law. At the time defendant did not know that Griffin would be in the area, and he was not out looking for Griffin. He got two rides to the complex, the last being with Johnny Fraizer Dolby. When Dolby got to the Walnut Terrace area, he and defendant saw Griffin on the street. Griffin came over to the car, snatched the car door open and told defendant, "I don't want to fight you no more. So why don't you go on home." Griffin then shut the car door, and Dolby drove down the street after telling defendant that he would take him home. After the car had gone only a short distance, defendant told Dolby to stop the car and let him out. Defendant testified that he did this because he wanted to leave the area the "easiest" way possible because Griffin had "popped up" in the area. Defendant got out of the car and started crossing the street. At this point he looked down the street and saw Griffin crouched down behind Charles McCoy. McCoy was walking up the street in the direction of defendant, and Griffin was "crouched down tipping up the street behind" McCoy. Suddenly, Griffin pushed McCoy out of the way so that Griffin and defendant were facing each other. Then Griffin said, "Nigger, I am going to make you use what you have got in your pocket." At this point defendant got his pistol out of his pocket and shot it once in the air hoping Griffin would turn back. Griffin did not turn back and so defendant shot at him a second time, this time hitting him in the stomach. Defendant stated that at the time he shot Griffin he was thinking about having heard that Griffin was looking for a gun and that he

was just trying to keep Griffin off of him; he did not shoot to kill him.

*Attorney General Robert Morgan and Assistant Attorney General Sidney S. Eagles, Jr., for the State.*

*Chambers, Stein, Ferguson & Lanning by Charles L. Becton for defendant appellant.*

MOORE, Justice.

[1] Assignments of error Nos. 1, 2, 3, 6, and 7 are not brought forward and argued in defendant's brief, and consequently these assignments are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court; *State v. Crews,* 284 N.C. 427, 201 S.E. 2d 840 (1974) ; *State v. McLean,* 282 N.C. 147, 191 S.E. 2d 598 (1972). However, in view of the gravity of the punishment in this case, we have carefully reviewed these assignments but find them to be without merit.

By his fourth assignment of error defendant asserts that "[t]he trial court erred in its instructions to the jury in that the trial court: (1) misstated the law; (2) expressed opinions to the jury; and (3) inaccurately summarized the evidence and contentions of the State and of the defendant."

[2] Under this assignment defendant first contends that the trial court in discussing premeditation and deliberation expressed an opinion contrary to G.S. 1-180 that there was no evidence of provocation in the case. That portion of the charge to which defendant points in support of this contention is as follows:

"Premeditation and deliberation may be shown by circumstances and in determining whether there was such premeditation and deliberation the jury may consider evidence *of the absence of provocation* and all other circumstances under which the homicide was committed." (Emphasis by defendant.)

This contention is without merit. Concerning premeditation and deliberation, the court stated:

"I have used the word 'premeditation' and 'deliberation.' Those elements must be proved beyond a reasonable doubt before a verdict of murder in the first degree can be rendered against the defendant. The State may prove these

elements in many ways. Ordinarily they are not susceptible of direct proof but may be inferred from circumstances such as ill will, previous difficulty between the parties, declarations of an intent to kill either before or after the inflicting of the fatal wound, or where the evidence shows that the killing is done in a brutal and ferocious manner.

"Premeditation and deliberation may be shown by circumstances and in determining whether there was such premeditation and deliberation the jury may consider evidence of the absence of provocation and all other circumstances under which the homicide was committed.

"In determining the question of premeditation and deliberation the jury must take into consideration the conduct of the defendant before and after and all attending circumstances in determining whether the act shall be attributed to premeditated design or sudden impulse."

Thereafter, the court fully defined premeditation and deliberation. When that portion of the charge to which defendant excepts is viewed in its context, it is apparent that the statement by the court was not an expression of an opinion that there was no evidence of provocation in this case. To the contrary, this instruction was a correct statement of the law in the case and was given by the court, as required by G.S. 1-180, to assist the jury in reaching a verdict. It is in accord with many well-considered decisions of this Court. See *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973); *State v. Duncan,* 282 N.C. 412, 193 S.E. 2d 65 (1972); *State v. DuBoise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Hamby* and *State v. Chandler,* 276 N.C. 674, 174 S.E. 2d 385 (1970).

[3] Defendant next contends that the manner in which the court summarized the evidence indicated to the jury that there was no provocation in the case. The paragraph in the charge complained of is as follows:

"The State's evidence tends to show that the defendant got a ride with Dolby to the Walnut Terrace area; that he had a pistol at the time of going there; that he got out of the automobile of Dolby and returned toward John Griffin after they had words as they passed in the automobile and the State's evidence tends to show that John Griffin did not have a weapon; was with his children or near his children and that he did not do any act or commit any act

State v. Fowler

> which would constitute provocation which would reduce the
> offense to manslaughter and that he did not do any act
> which would give a person reasonable grounds to believe
> that he was going to suffer any bodily harm whatsoever
> and particularly any serious bodily harm from John Grif-
> fin."

This recapitulation of the evidence is in substantial accord with
the testimony in the case. In reviewing the evidence the court
is not required to give a verbatim recital of the evidence but
only a summation sufficiently comprehensive to present every
substantial and essential feature of the case. If there are minor
discrepancies, they must be called to the attention of the court
in time to afford opportunity for correction, otherwise they are
deemed to be waived and will not be considered on appeal. *State
v. Thomas,* 284 N.C. 212, 200 S.E. 2d 3 (1973) ; *State v. Tart,*
280 N.C. 172, 184 S.E. 2d 842 (1971) ; *Shopping Center v. High-
way Commission,* 265 N.C. 209, 143 S.E. 2d 244 (1965) ; 7
Strong, N. C. Index 2d, Trial § 33 (1968). No prejudicial error
is shown by this statement. If defendant desired a more com-
prehensive statement of the evidence on this phase of the case,
he should have requested it.

[4]   Under this same assignment defendant also contends that
the trial court stated the following contention in such a manner
that the jury could reasonably infer that this statement was
the court's opinion:

> "The State contends upon the plea of self-defense
> that there was no evidence that Griffin was at this time
> making any assault on the defendant or threatening him
> with an assault; that there was no circumstance from
> which the defendant might reasonably have believed that
> he was about to suffer any death or great bodily harm. . . ."

This contention was amply supported by the State's evidence.
Again, if defendant had any objection to this contention, he
should have stated it at the time. *State v. Thomas, supra; State
v. Tart, supra; Emanuel v. Clewis,* 272 N.C. 505, 158 S.E. 2d
587 (1968) ; 7 Strong, N. C. Index 2d, Trial § 34 (1968).

[5]   Additionally, defendant contends that the manner in which
the trial court stated defendant's contentions lends credence to
defendant's contention that the trial court gave unequal stress
to the contentions for the State. The statement in the charge
complained of is as follows: "The defendant's evidence tends

to show that sometime after that, he contends a fairly brief time, that he was actually starting to visit a friend and got a ride with Dolby. . . . " Defendant stated that here the court, "as if editorializing," inserted "he contends a fairly brief time." Defendant had testified that approximately thirty minutes had elapsed from the time the deceased jumped on him and broke his nose at the King's Lounge to the time he saw the deceased at Walnut Terrace. The State's evidence was that three to four hours had elapsed. Therefore, the court's statement of defendant's contention was in accord with defendant's evidence and was in fact favorable to him. No prejudice appears.

By assignment of error No. 5 defendant asserts that "[t]he trial court erred by failing to give a full instruction on the circumstances under which the jury could return a verdict of not guilty. . . . " Defendant contends that the charge limited in effect the verdict of not guilty to a finding by the jury that defendant killed the deceased in self-defense, and that under the decisions in *State v. Woods*, 278 N.C. 210, 179 S.E. 2d 353 (1971), and *State v. Ramey*, 273 N.C. 325, 160 S.E. 2d 56 (1968), the court erred in failing to instruct the jury that if the State failed to satisfy it from the evidence beyond a reasonable doubt that the defendant was guilty of murder in the first degree or murder in the second degree or manslaughter, the jury should return a verdict of not guilty.

**[6, 7]** This assignment and the exceptions on which it is based do not comply with well-established appellate rules. Exceptions Nos. 34 and 35 appear at the end of the charge. Neither identifies by brackets or otherwise any particular portion of the charge to which exception is taken. These exceptions are ineffectual as bases for assignments of error in that they do not point out specific portions of the charge as erroneous. Neither does this assignment quote the portion of the charge to which defendant objects. Too, where the assignment of error is based on failure to charge, it is necessary to set out appellant's contention as to what the court should have charged. *State v. Crews, supra; State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970) ; *State v. Wilson*, 263 N.C. 533, 139 S.E. 2d 736 (1965). Even though this assignment does not comply with the well-established rules, since a death sentence is involved we have elected to discuss defendant's contention.

**[8]** The court correctly instructed the jury as to murder in the first degree and murder in the second degree as follows:

"I instruct you, Members of the Jury, that if you find from the evidence beyond a reasonable doubt that on or about the first of July of this year the defendant, Jesse Thurman Fowler, did intentionally and without justification or excuse shoot John Griffin with a pistol and thereby proximately caused his death and that Jesse Thurman Fowler then intended to kill John Griffin and that he acted with malice and premeditation and deliberation, if you find all of those facts to exist beyond a reasonable doubt, it would be your duty to return a verdict of guilty of murder in the first degree. If you do not so find or have a reasonable doubt as to any one or more of those things, you would not return a verdict of guilty of murder in the first degree.

"If you do not find the defendant guilty of murder in the first degree, you must determine whether he is guilty of murder in the second degree. Upon that charge if you find from the evidence beyond a reasonable doubt that on or about the first of July of 1973, Jesse Fowler did intentionally and with malice shoot John Griffin with a pistol thereby proximately causing his death, then nothing else appearing, it would be your duty to return a verdict of guilty of murder in the second degree. However, if you do not so find, or have a reasonable doubt as to any one or more of those things, you would not return a verdict of guilty of murder in the second degree."

In instructing on manslaughter the court said:

"If you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of voluntary manslaughter. And upon that charge if you find from the evidence beyond a reasonable doubt that he did on the day in question shoot John Griffin proximately causing his death but you are satisfied that he killed him without malice in the heat of sudden passion lawfully aroused by adequate provocation, as I have defined that to you, or if you find—that is, satisfied, not beyond a reasonable doubt but satisfied that although he believed that it was necessary to shoot John Griffin to protect himself, he did not have reasonable ground for that belief, then it would be your duty to return a verdict of guilty of voluntary manslaughter.

"If, although you are satisfied beyond a reasonable doubt that the defendant did intentionally shoot John

Griffin and thereby proximately caused his death, if you are satisfied, not beyond a reasonable doubt, but are satisfied that at the time of the shooting the defendant did have reasonable ground to believe and did believe that he was about to suffer death or serious bodily harm at the hands of John Griffin, and under those circumstances he used only such force as reasonably appeared necessary under the circumstances, then he would be justified by reason of self-defense and it would be your duty to return a verdict of not guilty."

In the above-quoted portions of the charge the court, after instructing the jury as to what they must find before returning a verdict of guilty of either murder in the first degree or second degree, concluded the instruction as to each of those offenses as follows: "However, if you do not so find, or have a reasonable doubt as to any one or more of those things, you would not return a verdict of guilty. . . . " On the charge as to manslaughter no comparable instruction was given to the effect that if the State failed to satisfy the jury from the evidence beyond a reasonable doubt that defendant did on the day in question shoot John Griffin thereby proximately causing his death, then the jury should return a verdict of not guilty. As stated by Justice Bobbitt (now Chief Justice) in State v. Ramey, supra:

"In our opinion, and we so decide, defendant was entitled to an explicit instruction, even in the absence of a specific request therefor, to the effect the jury should return a verdict of not guilty if the State failed to satisfy them from the evidence beyond a reasonable doubt that a bullet wound inflicted upon Mabry by defendant proximately caused his death. The trial judge inadvertently failed to give such instruction. The necessity for such instruction is not affected by the fact there was plenary evidence upon which the jury could base a finding that a bullet wound inflicted upon Mabry by defendant proximately caused his death. State v. Redman, supra [217 N.C. 483, 8 S.E. 2d 623 (1940)]." Accord, State v. Woods, supra.

As in Ramey, the trial judge in the present case inadvertently failed to give such instruction. This was error. However, in this case it is not such error as to require a new trial.

In State v. Freeman, 275 N.C. 662, 170 S.E. 2d 461 (1969), defendant was on trial for murder, and the jury was instructed

that it could return a verdict of guilty of murder in the first degree, guilty of murder in the second degree, guilty of manslaughter, or not guilty. The jury was correctly instructed on the law pertaining to murder in the first degree and murder in the second degree, but an erroneous instruction was given on the charge of manslaughter. The jury returned a verdict of guilty of murder in the first degree. In finding no error in the trial Justice Sharp, for the Court, stated:

> "Erroneous though the challenged instruction was, it does not entitle defendant to a new trial for, demonstrably, it was harmless. First, the verdict of murder in the first degree established that defendant had unlawfully killed Sawyer with malice, premeditation, and deliberation. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652. Defendant assigns no error in the charge as it related to murder in the first or second degree. . . . Ordinarily, when the jury is instructed that it may find defendant guilty of murder in the first degree, murder in the second degree, manslaughter, or not guilty, and the verdict is guilty of murder in the second degree, an error in the charge on manslaughter will require a new trial. In such event it cannot be known whether the verdict would have been manslaughter if the jury had been properly instructed. But where, as here, the jury was properly instructed as to both degrees of murder and yet found defendant guilty of murder in the first degree rather than the second degree, it is clear that error in the charge on manslaughter was harmless. In *State v. Munn,* 134 N.C. 680, 47 S.E. 15, the jury found 'that beyond all reasonable doubt the prisoner slew the deceased willfully, deliberately and with premeditation, and was guilty of murder in the first degree. The State (had) thus satisfied them of facts raising the crime above murder in the second degree, which only was presumed from the (intentional) killing with a deadly weapon. If there were error in the charge as to mitigation below murder in the second degree, it was therefore immaterial error.' "

Similarly, in the present case when the jury became convinced beyond a reasonable doubt that defendant, after deciding to take Griffin's life, intentionally and unlawfully shot and killed him, the error in the charge below murder in the second degree was immaterial error. This assignment is overruled.

By assignment of error No. 5 defendant also contends the trial court erred in failing to instruct the jury as to the law on intoxication as it relates to the facts in this case. Again, the assignment does not set out what the court should have charged. See *State v. Crews, supra.* We have, however, considered defendant's contention.

[9] Voluntary intoxication is not a legal excuse for crime. *State v. Bunn,* 283 N.C. 444, 196 S.E. 2d 777 (1973) ; *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968). Although it is no excuse for crime, where a specific intent is an essential element of the offense charged, the fact of intoxication may negate the existence of that intent. *State v. Propst, supra.* If a person on trial for murder in the first degree was so drunk at the time he committed the homicide charged in the indictment that he was utterly incapable of forming a deliberate and premeditated purpose to kill, an essential element of murder in the first degree is absent. *State v. Bunn, supra.* In such a situation it is said that " 'the grade of offense is reduced to murder in the second degree.' " *State v. English,* 164 N.C. 497, 511, 80 S.E. 72, 77 (1913).

[10] While there was evidence that defendant was drinking, there was no evidence that he was drunk or intoxicated except defendant's exculpatory statement to Detective Williams. All the State's witnesses who saw him at the time of the shooting or when he made his statement to Detective Williams testified that defendant appeared to be in complete control of his mental and physical faculties and was not intoxicated or drunk. None of defendant's numerous witnesses who saw him testified that he was drunk at anytime during the day on Sunday, July 1, up to and including the time of the shooting, or after the shooting until defendant surrendered to the police. Defendant testified in his own behalf and recited in minute detail his activities on Saturday, June 30, and Sunday, July 1. At no time in his testimony did he state that he was intoxicated or that his mind was in any manner impaired or affected by anything he had had to drink. His only defense was self-defense, and he did not request any instruction on intoxication as a defense to first degree murder. We hold, therefore, that there was not sufficient evidence of intoxication in this case to require an instruction as to the law on intoxication as a defense to murder in the first degree. See *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971) ; *State v. Hamby* and *State v. Chandler, supra; State v. Bunton,* 247 N.C. 510, 101 S.E. 2d 454 (1958).

Apparently in an attempt to simplify matters on appeal, the State and defense counsel entered into the following stipulation:

"[We] hereby stipulate and agree that upon the voir dire of the jury the following transpired at the trial of this matter.

"1. That the jury voir dire was not transcribed.

"2. That the State questioned the prospective jurors with regard to their attitudes about the death penalty and advised them that death would be the penalty as a result of a first degree murder verdict.

"3. That two jurors were excused for cause because of their views on capital punishment."

Now defendant, under his eighth assignment of error, asserts that the death qualification of the jury wherein the jury was advised that death would be the penalty upon a first degree murder verdict, the exclusion of death-scrupled jurors from appellant's jury and the failure of the trial court to have the jury *voir dire* transcribed violated appellant's Sixth Amendment right to a jury that reflects a fair and representative cross section of the community.

Defendant first contends under this assignment that the Sixth Amendment to the United States Constitution mandates that no venireman be excluded for cause because of his views on the death penalty, regardless of what his views may be. Therefore, defendant argues, the trial court committed error in permitting the veniremen to be questioned about their beliefs on capital punishment and in allowing the State to advise the prospective jurors that death is the penalty in a first degree murder conviction.

The Supreme Court of the United States in *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), decided otherwise. In *Witherspoon* the United States Supreme Court held that the sentence of death may not be carried out if the jury that imposed it was chosen by excluding veniremen for cause simply because they had general objections to the death penalty or expressed conscientious or religious scruples against infliction of the death penalty. But in footnote 21 of that opinion it is stated:

"We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced

to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt."

[11]   Since *Witherspoon* this Court has consistently held that if a prospective juror states that under no circumstances could he vote for a verdict that would result in the imposition of the death penalty no matter how aggravated the case and regardless of the evidence shown, the trial court can properly dismiss the juror upon a challenge for cause. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974) ; *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336 (1972) ; *State v. Watson,* 281 N.C. 221, 188 S.E. 2d 289 (1972) ; *State v. Cook,* 280 N.C. 642, 187 S.E. 2d 104 (1972) ; *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971) ; *State v. Dickens,* 278 N.C. 537, 180 S.E. 2d 844 (1971) ; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969).

Under these decisions it is permissible to ask a prospective juror about his beliefs on capital punishment in order that the State, as well as the defendant, may have a trial by an impartial jury. To achieve this impartial jury the State is allowed to challenge for cause any juror who would automatically vote against a verdict that would require the imposition of the death penalty without regard to the evidence that might be developed at the trial of the case, or whose attitude towards the death penalty would prevent him from making an impartial decision as to defendant's guilt. As stated by this Court in *State v. Doss, supra,* "a venireman should be willing to consider all the penalties provided by State law and he should not be irreparably committed before the trial has begun to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceeding." See also *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967). Justice Higgins in *State v. Spence,* 274 N.C. 536, 539, 164 S.E. 2d 593, 595 (1968), stated the reason for challenge as follows:

"According to the Federal Court decisions 'the function of challenge is not only to eliminate extremes of partiality on both sides but to assure the parties that the jury before whom they try the case will decide on the basis of the evi-

dence placed before them and not otherwise.' The purpose of challenge should be to guarantee 'not only the freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the State the scales are to be evenly held.' *Swain v. Alabama,* 380 U.S. 202; *Tuberville v. United States,* 303 F. 2d 411 (cert. den. 370 U. S. 946) ; *Logan v. United States,* 144 U.S. 263; *Hayes v. Missouri,* 120 U.S. 68."

[12]　We hold that in a capital case it is proper to inquire into a prospective juror's views on capital punishment in order to determine his competency to serve in an impartial manner. See *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974).

Under this same assignment of error defendant also contends that the trial court erred in not ordering the court reporter to transcribe the jury *voir dire,* and that such failure requires that defendant's death sentence be vacated. In making this contention, defense counsel in his brief points to the stipulation entered into with the State whereby it was stipulated that the jury *voir dire* was not transcribed and that two jurors were excused for cause because of their views on capital punishment.

"A stipulation is a judicial admission. [Citations omitted.] It has been said in North Carolina that courts look with favor on stipulations, because they tend to simplify, shorten, or settle litigation as well as saving cost to the parties. [Citations omitted.]

\*　　\*　　\*

" . . . '[S]tipulations will receive a reasonable construction with a view to effecting the intent of the parties; but in seeking the intention of the parties, the language used will not be so construed as to give the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished. . . .' 36 Cyc. 1291, 1292. . . ." *Rickert v. Rickert,* 282 N.C. 373, 193 S.E. 2d 79 (1972).

" . . . 'While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision. . . . ' " *State v. Powell,* 254 N.C. 231, 118 S.E. 2d 617 (1961). On its face the stipulation in the present case is not definite and certain. The stipulation only notes that two jurors were excused for cause "because of their views on capital punishment," but does not reveal whether the

State or defendant moved for their exclusion or what their views on capital punishment might have been. As defense counsel in his brief states:

> "No stipulation or admission based on recollection can reflect the many possible answers given in response to the death-qualifying questions. No reflection now can show this Court how resolute or irresolute an answer may have been. Did either of the excused jurors voice general objections to the death penalty or express conscientious or religious scruples against its infliction? Was an excused juror's response ambiguous? Was one of the jurors excused because he said that he could not vote for the death penalty in this particular case? We do not know the answer to these questions; there is no transcript."

[13] In effect, it is now defendant's position that the stipulation entered into by defense counsel and the State is insufficient in that it does not provide this Court with an adequate basis for determining whether the two jurors allegedly excused for cause because of their views on capital punishment were properly excused under *Witherspoon* and the decisions of this Court cited above, and furthermore that it was error for the trial court not to order the *voir dire* examination of the jurors transcribed. We agree that the stipulation was deficient as contended by defendant. In order to determine whether the two jurors were in fact properly excused, this Court *ex mero motu* ordered that the court reporter's record of the *voir dire* examination as to all jurors in this case be transcribed and certified by the trial court to this Court, and that such transcript be made a part of the case on appeal. This was done. See Rule 19, Rules of Practice in the Supreme Court.

This sixty-five page transcript discloses that, contrary to the stipulation, *no* prospective juror was excused for cause by reason of his views on capital punishment. Although two prospective jurors who expressed some reservation as to capital punishment were excused, they were *not* excused for cause but were excused peremptorily by the State. Including these two peremptory challenges the State utilized seven of its permissible nine peremptory challenges, and defendant seven of his permissible fourteen. See G.S. 9-21. Peremptory challenges are challenges that may be made according to the judgment of the party entitled thereto, and the reason for challenging a juror peremptorily cannot be inquired into. *State v. Noell, supra; State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969).

It is the primary duty of defense counsel to prepare and docket a true and adequate transcript of the record in the case on appeal in a criminal case. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970); *State v. Roux*, 263 N.C. 149, 139 S.E. 2d 189 (1964); G.S. 15-180; G.S. 1-282. It is also the duty of the solicitor to scrutinize the copy that the appellant serves upon him. If it contains errors or omissions, it is the solicitor's responsibility to file exceptions or countercase. *State v. Fox, supra.* If, as in the present case, defense counsel desires to take exception to the act of the court in excusing a prospective juror, he should either enter into a stipulation with the State setting out in detail the reason for excusing the juror, or he should include a transcript of the *voir dire* examination as to that juror in the case on appeal. He should not take exception to his own failure to prepare and docket a true and adequate transcript of the record in the case on appeal. Such action is not approved.

[14]  Since the complete record now before us discloses that no juror was excused by the State for cause due to his view on capital punishment, defendant's contention that the trial court erred in excusing jurors for cause is overruled, and his contention as to the failure of the trial court to order a transcript of the *voir dire* examination to be included in the case on appeal is no longer tenable.

[15]  Defendant by his final assignment of error contends that the death penalty in this case is cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the Constitution of the United States and Article I, sections 19, 24, and 27 of the Constitution of North Carolina. He further contends that capital punishment in North Carolina is still imposed in a selective and arbitrary manner, in violation of *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972).

Defendant also adopts and incorporates by reference the contentions and citations of authority contained in the brief filed in *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974), by the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae*, and the brief filed in *State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973), by the North Carolina Civil Liberties Union Legal Foundation, Inc., as *amicus curiae*. Suffice it to say that the arguments advanced in this case were fully discussed and rejected in the opinions filed in those cases. Further discussion would serve no useful purpose.

In *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19 (1973), this Court declared that the death penalty is the sole and exclusive punishment for murder in the first degree committed in North Carolina after 18 January 1973. G.S. 14-17. The murder for which this defendant has been convicted was committed on 1 July 1973. The death sentence, therefore, was not only proper but was the only one that the trial court could impose.

An examination of the entire record discloses that defendant has had a fair trial free from prejudicial error. The judgment imposed must therefore be upheld.

No error.

Chief Justice BOBBITT, Justice HIGGINS and Justice SHARP dissent as to death sentence and vote to remand for imposition of a sentence of life imprisonment for the reasons stated in the dissenting opinion of Chief Justice Bobbitt in *State v. Jarrette,* 284 N.C. 625, 666, 202 S.E. 2d 721, 747 (1974).